THE CONSOLIDATED TRACTION COMPANY, PLAINTIFF IN ERROR, v. VIRGINIA A. SCOTT, ADMINISTRATRIX, &c., DEFENDANT IN ERROR.

1. A street railway company propelling its cars by electricity along the public streets of a city, owes a duty to the public which requires it to so regulate the movements of its cars at the intersection of such streets, when receiving or discharging passengers from a standing car, as not to unnecessarily expose pedestrians to the danger of collision with a passing car on the opposite track.

2. While a car of such a company was stopping at a street crossing to receive and discharge passengers, a boy of the age of seven years and eight months, who was walking across the street from behind the standing car, was struck and killed by another of its cars passing from the opposite direction. The evidence tended to prove that the boy's view of the approaching car was obstructed until he had passed the standing car; that no bell or gong was sounded by the approaching car, which was going at the rate of six miles an hour, and that the boy did not look for an approaching car before entering upon the track where he was struck almost immediately upon stepping upon it, and carried a

distance of thirty or forty feet before the car could be stopped. Upon the trial of an action for damages against the company for negligently causing the death, the trial judge refused motions to nonsuit and to direct a verdict, on the alleged grounds that there was no proof of negligence on the part of the company, and that contributory negligence was established on the part of the plaintiff's intestate, and ruled that the questions of negligence and contributory negligence were for the jury. *Held,* that the judge committed no error in so ruling.

3. It was also held to be no error in the judge to refuse to charge that it was not the duty of the moving car to stop before passing the standing car, the judge having already charged the jury that it was for them to say, under all the circumstances, whether it was negligence upon the part of the motorman to run past that standing car at that time and place or not.

4. The rule requiring one to look and listen before crossing a steam railway, in order to be in the exercise of due care, does not apply with equal force to one crossing the track of a street railway in a city street where the company and the public stand on an equal footing in the use of the highway, and it was held that it was not negligence, *per se,* in the plaintiff's intestate, under the circumstances, in going upon the defendant's track without first looking for an approaching car, and the judge's refusal to so charge was sustained, he having fairly submitted the question of contributory negligence as a matter for the jury to determine upon the facts in evidence.

5. When a child has reached the age of discretion and is considered *sui juris* as a matter of law, the degree of care and caution required of him will be no higher than such as is usually exercised by persons of similar age, judgment and experience, and whether that degree of care and caution has been exercised by the child in a given case is generally, if not always, a question for the jury.

On error to the Supreme Court.

For the plaintiff in error, *Warren Dixon.*

For the defendant in error, *Allan L. McDermott.*

The opinion of the court was delivered by

HENDRICKSON, J. Virginia A. Scott, the defendant in error, brought suit in the Supreme Court against the Consolidated Traction Company, the plaintiff in error, in tort, for damages resulting from the death of her son, William Scott, a boy aged seven years and eight months, caused by being run over by a

trolley car of the defendant below, in the city of Bayonne, on the 9th day of October, 1894, The suit was brought by the mother as administratrix of the son, for the benefit of the next of kin under the statute. The trial took place before Mr. Justice Lippincott and a jury, in the Hudson Circuit, and resulted in a verdict for the plaintiff below.

The matters for review brought into this court are alleged errors of the trial judge upon exceptions taken below upon his refusing, at the close of the plaintiff's case, to call the plaintiff and order a nonsuit; and also upon his refusal, at the close of the evidence on both sides, to direct a verdict for the defendant below; and also upon exceptions taken to the judge's refusal to charge as requested and to portions of the charge as delivered.

The facts of the case as developed by the evidence of the plaintiff below, briefly stated, were that plaintiff's son William, in company with his brother Horace, aged nine years, were returning home from a store, to which they had been sent, and in so doing were passing along the north side of Centre street, in said city, in a westerly direction, and were about to cross Avenue C, along which the defendant was engaged in running an electric street railway with double tracks, running from Jersey City to Bergen Point. The general course of the railway was from north to south.

As the boys neared the northerly crossing of Centre street over Avenue C, a closed car, on its way to Jersey City, approached on the northbound track and stopped two or three feet north of the crossing for the purpose of receiving and discharging passengers. While the car was so standing there, receiving passengers, the boys, with one other pedestrian, Mr. McFale, had reached the crossing in the rear of the standing car. Mr. McFale and the larger boy stopped, but the smaller boy, who was one or two feet back of them, walked onto the southbound track, where he was struck by a car from Jersey City and killed. Just before the car struck him he was seen to make a sort of spring as if to get out of the way, but it was too late. The standing car obstructed the vision of those be-

hind it from seeing an approaching car on the southbound track. The southbound car was traveling at the rate of six miles per hour, and had passed the rear of the standing car seven or eight feet before it struck the boy. The motorman at once reversed the car, which continued its motion to the south side of Centre street some thirty or forty feet before it was brought to a standstill. The witnesses heard no sound of bell or gong from the approaching car, and there was no evidence that the boy knew a car was approaching when he started to pass over from behind the standing car. The boy was familiar with the passing of cars to and fro on Avenue C, and had often passed over this crossing. While these may not be all of the facts shown, I think they are sufficient upon which to fairly consider the legality of the judge's rulings at the trial. Upon the facts proved, the defendant moved that the plaintiff be nonsuited on the ground that no negligence had been shown on the part of the defendant, and that contributory negligence had been proved on the part of the plaintiff's intestate. This motion the judge refused and his refusal is now assigned for error.

It is insisted in support of this assignment of error that the plaintiff below failed to establish any facts from which the jury would be justified in finding negligence on the part of the defendant.

But this insistment is scarcely in accord with the well-settled rule regulating the action of the trial judge upon such a motion. It is not for him to say whether there are any facts proven in a given case from which the jury would be justified in finding negligence on the part of the defendant, but rather whether any facts have been established by evidence from which negligence might be reasonably inferred by a jury.

As stated by Mr. Justice Magie, in delivering the opinion of this court in *Newark Passenger Railway Co.* v. *Block*, 26 *Vroom* 605: "In performing this function the trial judge must take care not to trench on the peculiar province of the jury to determine questions of fact, and must bear in mind

that the question is not whether he would infer negligence from the established facts, but whether negligence can be reasonably and legitimately inferred therefrom by the jury." In applying this general rule to the examination of the facts, it must be remembered that "negligence is not a fact which is the subject of direct proof, but an inference from facts put in evidence." "Now negligence," says Dr. Wharton, "may be disputed when the facts are undisputed, and the question in such case, where the dispute is real and serious, is eminently one for the jury, under the direction of the court." *Whart. Neg.* 3420.

"Whether the facts are disputed or undisputed, if different minds might honestly draw different conclusions from them, the case should properly be left to the jury, and that, in order to withdraw such a case from the jury, the facts should not only be undisputed, but the inferences, in respect of the defendant's failure of duty, which arises from these facts, should be indisputable." 2 *Thomp. Tr.* 1208. This same doctrine has been repeatedly laid down by this court. *Bonnell* v. *Delaware, Lackawanna and Western Railroad Co.*, 10 *Vroom* 189; *Bahr* v. *Lombard Ayres Co.*, 24 *Id.* 233; *Baldwin* v. *Shannon*, 14 *Id.* 596; *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton*, 26 *Id.* 342; *Pennsylvania Railroad Co.* v. *Matthews*, 7 *Id.* 531.

Can it be said, as a matter of law, that upon the facts stated there was no duty laid upon the defendant at this public crossing to so regulate the action of its cars, as to rate of speed, the giving of signals or otherwise, that pedestrians should be protected from unnecessary exposure to danger from collision with its passing cars. The counsel for the plaintiff in error, in his argument, admitted that the company might owe such a duty to a passenger who alighted from the northbound car and had passed behind it in making his exit, by reason of its contractual relations with the passenger.

Indeed, it has been held that in an action for injuries to plaintiff's intestate while crossing defendant's car track, negligence and contributory negligence are questions for the jury,

where it appears that the intestate, on alighting from one of the defendant's cars, passed behind it and attempted to cross the other track when he was struck by an approaching car, which was running at its ordinary speed, and there is no evidence that any signal or warning of its approach was given. *Dobert* v. *Troy City Railway Co.*, 36 *N. Y. Supp't* 105.

In another case, an instruction that the care required of a street car company to persons upon its tracks is not that high degree of care which it is required to exercise toward passengers, was held to be incorrect when applied to a company running electric cars on city streets. *Dallas Rapid Transit Railway Co.* v. *Dunlap*, 26 *S. W. Rep.* 877.

It is well settled that at crossings street cars and pedestrians have equal rights to the use of the streets, and it has been held in that connection that what is proper care and precaution on the part of those in charge of cars, to prevent accidents, is a question of fact in each case. *Schulman* v. *Houston W. S. and P. F. Ry. Co.*, 36 *N. Y. Supp't* 439.

That such a duty toward pedestrians who are thus passing along the crossing of a public street traversed by a street car company, becomes chargeable to the latter is emphasized by the fact that such crossings are necessarily and legally frequented by not only the adults but by the children of a town, attended or unattended by older people, and that such duty becomes more or less exacting according to the circumstances of each case.

The facts in the present case, to say the least, fairly raised a question for the jury, whether the defendant was in the exercise of due and reasonable caution, when it permitted its southbound car to pass the standing car at that public crossing and at such a rate of speed under the circumstances. In forming a judgment upon that question, there were subsidiary questions, equally calling for consideration and judgment, such as—was it the duty of the motorman, in the exercise of due and proper care, as he approached the standing car which would obstruct his view of passengers or pedestrians who might be waiting to pass, to sound his bell or gong as a warn-

ing; and did he so sound his bell or gong; and should he have had his car under control at this crossing; and did he have it under such control when approaching the standing car? These facts and the inferences to be fairly drawn from them, under the principle before alluded to, it seems to me, clearly, were matters for the jury exclusively, and that the trial judge was right in so submitting them and refusing to nonsuit.

The next ground of contention, why the motion to nonsuit should prevail, was because of alleged contributory negligence on the part of the plaintiff's intestate.    But, like the preceding ground, in order to give it the effect of requiring the court to arrest the trial and take the matter from the jury, the fault of the intestate must appear to be so clearly established by the evidence that there can be reasonably only one opinion on the subject.

The Chief Justice, in *Pennsylvania Railroad Co.* v. *Matthews, supra,* after saying, in substance, upon a motion of this character, that the evidence on the subject was open to fair debate and left the mind in a state of some doubt on the question of exercising that degree of care which the plaintiff's legal duty exacted, added: "This being the case, the judge would not have been justified in taking this question from the jury. Such a course is proper only when the absence of caution is apparent, and is in reason, indisputable." The evidence in this cause, at the close of the plaintiff's case, showed that the boy was making his way across the street to go to his home, and was walking from back of the defendant's standing car at an ordinary walk, and that after having taken a step or two beyond it was struck by the approaching car. He was in the centre of the southbound track at the time. Mr. McFale, a disinterested witness, says it was but a few seconds from the time the boy passed him on his left until he was struck by the car; that it was done very quickly; it was done like a flash; he could not say whether the boy looked up to see if the car was coming, though it was the witness' impression that he did not; witness, however, saw the boy make a spring or dash forward at the last moment before he was

struck, and was impressed that he had just caught a glimpse of the car.

It would seem that, under such circumstances, with a car approaching at the rate of speed this was, apparently without the sounding of bell or gong, creeping up, as it were, to the side of the standing car which obstructed the view, even if the deceased had been an adult, the question of contributory negligence on his part would have been one for a jury.

But that is not the case here, and it is not necessary to decide that question now. There is another element to be considered, as affecting juridical action upon the question of contributory negligence in this case, and one that, I think, clearly makes it a question for the jury alone, and that is the fact that the plaintiff's intestate was a boy of tender years. He was described as a bright boy, but he was so young that naturally his powers of reason and judgment could be but partially developed.

He had not passed far beyond the age of seven years, the period below which children have, in many cases, been held to be *non sui juris* as a matter of law, and hence not chargeable with contributory negligence under any circumstances.

Where there is a question whether the child is of sufficient age and discretion to be capable of some care for his own safety, the question of his capacity and its degree is for the jury. 2 *Thomp. Neg.* 1182.

In an action, by a child eight years old, against an electric street railway company, for injuries caused by being run over by defendant's car, the question whether plaintiff was *sui juris* was held to be a question for the jury. *Stone* v. *Dry Dock Railway Co.*, 21 *N. E. Rep.* 712; 115 *N. Y.* 104, followed; *Bennett* v. *Brooklyn Heights Railway Co*, 37 *N. Y. Supp't* 447.

And when a child has reached the age of discretion, and is considered *sui juris* as a matter of law, the degree of care and caution required of him will be no higher than such as is usually exercised by persons of similar age, judgment and experience. And whether that degree of care and caution has been exercised by the child in a given case, is usually, if not

always, a question of fact for the jury.    4 *Am. & Eng. Encycl. L.* 46, and cases cited.

The counsel for defendant below, in the argument here, called the attention of the court to the fact that the question of contributory negligence of infants is usually one for a jury, but not always, citing *Thompson* v. *Buffalo Railway Co.*, 39 *N. E. Rep.* 709 ; *Nagle* v. *Allegheny Valley Railroad Co.*, 88 *Pa. St.* 35 ; *Dietrich* v. *Baltimore, &c., Railway Co.*, 58 *Md.* 347, where the court, as a matter of law, found the plaintiff's intestates to have been guilty of contributory negligence and withdrew the cases from the jury.    It is noticeable, however, that in those cases the intestates were all of the age of fourteen years, and the facts showed that they had acted in entire disregard of the care and caution that might be reasonably expected from persons of their age and experience.

The case in hand does not seem, by its circumstances, to arrange itself under the category of the cases named.    The boy was much younger and he was following the accustomed pathway for pedestrians at the intersection of public streets, and he approached defendant's westerly track from behind another car of defendant that obstructed his view of the approaching car, and his gait was an ordinary walk.    Taking these facts in connection with the other circumstances stated, the trial judge could not certainly have done less than he did, which was to refuse to nonsuit and submit the question of contributory negligence to the jury.

The next assignment of error is based on an exception to the trial judge's refusal, after the defendant rested and the evidence was closed, to direct a verdict for the defendant on the same grounds that the motion to nonsuit was based, and on the ground that this was an unavoidable and inevitable accident.

The rule for the guidance of the trial judge upon this motion is practically the same as governs in the case of the motion to nonsuit, and has been already stated.

The defendant's testimony raised a conflict as to some of the facts, the motorman having testified that the boy came run-

ning on the track diagonally toward the approaching car and was struck before it had reached a line opposite the rear of the standing car; and that, to the best of his opinion, he had rung the gong before reaching Centre street. He admitted that he did not have his car under control as he approached the standing car, because, as he stated, the latter had stopped so quickly and unexpectedly to him. Another of defendant's witnesses said the boy was on a smart walk, not a run, when he passed the rear of the standing car toward the track, and that the car came to a standstill one or two feet before reaching the rear of the standing car. Another testified it had passed several feet beyond the standing car before it was stopped.

This conflict of testimony and the admission of the motorman that he did not have his car under control, made it more clearly the duty of the judge to submit the questions of negligence, on both sides, to the consideration of the jury, so that the first two assignments of error must be overruled.

The next assignment of error is upon an exception to the trial judge's refusal to charge the following request of defendant, to wit: "It was not the duty of the moving car to stop before passing the standing car." Upon the subject-matter of this request the judge charged as follows: "Now, upon this question as to the right of one car to pass another standing car on or near a crossing taking in or discharging passengers, in my view of this case, it is not a question of law for the court to determine, whatever it might be considered to be in a case of a passenger alighting from a car and then going behind the car on his way to his destination, and another car suddenly coming upon him in the opposite direction, but the question here is as between the company and one attempting to pass across the street at a place where persons usually cross, where persons are in the habit of crossing, and a car is standing there, and the person crossing from the side of the street on which the car is standing in the rear of that car and is met by a car passing in another direction, and I take it that the question here is for the jury to say under all the circumstances

whether it was negligence upon the part of the motorman to run past that standing car or not."

Exception was also taken to this part of the judge's charge and error assigned thereon, so that both of these assignments may be considered together.

It was insisted upon the argument by counsel of the defendant company that the court should have charged this request, on the ground that defendant owed to the plaintiff's intestate no other duty than that imposed upon any other vehicle in the street that might have caused such an accident, and that if the only negligent act alleged was that the teamster driving such vehicle had passed a standing vehicle without first stopping, the court would not permit the case to go to the jury.

If the request is to be taken as raising the general question, apart from the particular circumstances, that it is not necessarily the duty of a moving car upon a street railway to stop before passing a standing car on the adjacent track, the judge would have probably answered the question in the affirmative.

But the request could not have been rightly considered in that narrow aspect, for it is well settled that in order to entitle a party to have the jury instructed as requested, the request must not only be correct in point of law but applicable to the evidence. And the judge had a right to consider, as he evidently did, this request as intended to apply to the circumstances of the case as proven; and so regarding it, the question was this: Could the judge say as a matter of law that it was not the duty of the defendant, under all the circumstances, to have so regulated the movements of its cars that its moving cars should stop before passing the standing car that was engaged in taking on or discharging passengers at this street crossing? Much that I have already said in reference to the court's refusal to nonsuit and to direct a verdict has application here and I need not repeat it. Suffice it to say that in the light of the authorities cited and of common experience, I think there is at least room for honest differences of opinion on the subject, and that negligence might be reasonably inferred. If so, no matter what the court might think, the question, as before stated, is one for the jury.

The language of the trial judge, above cited, in submitting this question to the jury is not open to judicial criticism.

The rules that should govern the jury in determining this question were carefully laid down with due regard to the rights of the defendant. I find no error under these two assignments.

Another assignment of error is based on the exception to the refusal of the judge to charge that "if plaintiff's intestate entered upon the southbound track without first looking for an approaching car, the plaintiff cannot recover." While not charging this request in terms, the judge charged that if the boy himself was guilty of negligence or the want of reasonable care, which contributed in any degree to that result, there could be no recovery; and further, that " the rule is that in crossing a street in which these cars are running, the pedestrian must exercise reasonable care to avoid injury to himself. He has no right to shut his eyes and walk across; he must use his senses, his eyes, his ears, and he must do that which reasonable, ordinary care requires of him, and it is a question for the jury to determine whether this boy was negligent there." He further charged that " being a boy of tender years, he is held only to that degree of reasonable care and caution which his age and capacity permit him to use and exercise." Further on, the judge charged that if the boy " saw a car coming he was bound to use his eyes, to look, to see that there was danger there and he could not go in front of it; and if he did, and accident and injury resulted to him, although the motorman may have been negligent, the defendant is held not liable in this accident."

It may be said, with reference to this request to charge, that the proposition that one to be in the exercise of due care must look and listen before crossing a steam railway, is well established, but this duty does not apply with equal force to one in crossing the tracks of a street railway. *Newark Passenger Railway Co. v. Block, supra; Lynam v. Union Railway Co.,* 114 *Mass.* 83; *Shea v. St. Paul City Railway Co.,* 50 *Minn.* 395; 52 *N. W. Rep.* 902; *Moebus v. Hermann,* 108 *N. Y.* 354; 15 *N. E. Rep.* 415.

In the case of *Shea* v. *St. Paul City Railway Co., supra* it was held that the failure to look up and down a street railroad upon a public street, before attempting to cross, is not, as a matter of law, negligence as in case of crossing the ordinary steam railroad. And, in *Moebus* v. *Hermann, supra*, the New York Court of Appeals held the same doctrine. It is a matter of common knowledge that the double tracks of street railways lie close to each other, and that, after emerging from behind the standing car, the plaintiff's intestate could have had but a step or two to take to reach the opposite track in front of the approaching car. And even if the boy had looked as soon as he passed this standing car, it is a question whether he could have saved himself from the impending danger. It may be that, without looking, the approaching car was within the range of the boy's vision, and that the spring he made in front of the car was under a sense of sudden terror that increased the hazard of his death. But it must be remembered that a person placed by the negligence of another in a position of sudden danger, and, under the influence of great terror, does an act which may contribute to his injury or death, such contributory negligence is not imputable to him and will not bar a recovery. *Whart. Neg.* 304.

I think, in view of the authorities named, and considering the extreme youth of the plaintiff's intestate, that the trial judge could not have properly charged this request and thus held that, under the circumstances of this case, a failure of the plaintiff's intestate to look for an approaching car before entering upon the southbound track, would be negligence, *per se*, that should bar a recovery. And I think the judge's charge upon the subject of that request as to the amount of care and watchfulness required of the plaintiff's intestate, under such circumstances, was fully up to the standard exacted by the law.

The only other assignments of error were those with reference to the jury's right in estimating damages to consider any pecuniary benefit which might arise by the earnings of deceased after he would have reached his majority. The judge held

that the jury was not limited by the period of the minority of the deceased, but that under the rules as laid down by him, they might extend their estimate through such period as they might determine would be a reasonable expectation of the continuance of his life. The assignments on this point were not insisted upon at the argument, and I need only say that I find no error in that part of the record.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DE-PUE, GARRISON, GUMMERE, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, HENDRICKSON, NIXON. 12.

*For reversal*—None.