62 773|
68 620

THE ATLANTIC COAST ELECTRIC RAILROAD COMPANY, PLAINTIFF IN ERROR, v. JOHN RENNARD, DEFENDANT IN ERROR.

THE ATLANTIC COAST ELECTRIC RAILROAD COMPANY, PLAINTIFF IN ERROR, v. JOEL WILSON, DEFENDANT IN ERROR.

Argued November 21, 1898—Decided March 6, 1899.

The driver of a vehicle, upon a road used by the public at large, which crosses the track of an electric railway, must exercise reasonable care to avoid collision, and the same duty rests upon the motorman of a trolley car in approaching the crossing of such a road, whether the crossing is in the country or in a town; and in case of accident, the question whether either or both of said parties failed in such duty is one to be determined by the jury, when the proofs on the subject of negligence leave that question in doubt. Neither party at such a crossing has a paramount right of way.

On error to the Supreme Court.

For the plaintiff in error, *Isaac C. Kennedy* and *Flavel McGee.*

For the defendants in error, *William D. Daly* and *Charles C. Black.*

The opinion of the court was delivered by

Nixon, J. The two cases above stated were by consent of court and counsel tried together at the Monmouth Circuit, the damages claimed in each case resulting from the same accident and all the proofs and admitted facts apply equally to both. Verdict was given and judgment entered in the Circuit for each of the plaintiffs and afterwards affirmed by the Supreme Court. By this writ these judgments are brought here for review.

The plaintiff in error operates an electric railway between Asbury Park and Pleasure Bay, in Monmouth county, and the defendant in error, John Rennard, was the driver of an omnibus owned by Joel Wilson, the other defendant, running between Asbury Park and the Deal Lake water-chutes. The route of the stage or omnibus crossed the track of the electric road a short distance outside of the limits of Asbury Park, and at this place the collision occurred which led to these suits ; Rennard claiming damages for personal injuries, and Wilson for losses sustained by the demolition of his stage and the killing of one of his horses and rendering the other useless.

The errors assigned are twenty-two in number, but it will not be necessary to deal with each separately, as several of them in repeated instances relate to the same subject.

Exception was taken to the refusal of the trial judge to nonsuit the plaintiff at the close of his evidence. At that stage of the case the evidence showed that the road crossing the track of the electric railway was used by the public at large in going from Deal Beach to Interlaken station, and that the plaintiff, Rennard, crossed at this place seven or eight times a day. Three witnesses had testified that at the time of the accident the car was running at the rate of eight

or ten miles an hour, and three other witnesses had sworn
that they heard no gong rung by the motorman of the car.
It was also shown that the car ran from forty to sixty feet
after striking the omnibus, thus confirming the proof as to the
great speed of the car.   The injuries received by the plaintiff
had been proved, and also the destruction of the stage and
loss of the horses owned by Wilson.   The only ground for
the motion to nonsuit, therefore, rested upon the alleged con-
tributory negligence of the plaintiff in attempting to cross the
track of the railway in front of an approaching car.   The
plaintiff did not deny doing this, thinking, as he said, that he
could cross before the car reached that point.   The question
of plaintiff's negligence was by the refusal of this motion left
to the jury, and we think upon a careful examination of the
facts of this case that this was not error.

In the case of *Orange and Newark Horse Car Railroad
Co.* v. *Ward,* 18 *Vroom* 560, the learned judge delivering the
opinion of the court, said : "Both vehicles were in motion
towards each other when the plaintiff saw the car.   The
plaintiff decided to urge on the horses as the safer means of
escape.   The contributory negligence charged is that he drove
on instead of turning from the track.   Now, whether the
safer and more prudent course of the plaintiff to pursue was
to attempt getting off the track or to quicken his speed and
pass before the car reached him, were questions of fact to be
settled upon the evidence and by the jury.   I think it quite
obvious that the judge could not have determined legally that
one course or the other was demanded of the plaintiff in the
exercise of proper care, or that driving on under existing
exigencies was legal negligence."

And in *Consolidated Traction Co.* v. *Lambertson,* 30 *Vroom*
297, the court said : "He who puts himself in the way of
runaway horses that have escaped from the driver's control
must know that he is taking a risk.   But a jury may well
say that he who crosses in front of a trolley car provided with
a motorman may assume that it is furnished with the means
of stopping or reducing speed.   Then there was a question

for the jury in this case whether a prudent man, upon such an assumption, might not judge it safe to cross in front of a trolley car three hundred feet away, although coming at great and illegal speed. Upon the assumption of the existence of means to reduce speed and to stop, and of a servant employed to make use of such means, it would be absurd to say that one was bound to refrain from crossing for fear the servant would not make use of the means." There are no facts in this case which exempt it from the application of the foregoing rules.

In holding that the motion to nonsuit on the ground of contributory negligence in attempting to cross in front of the approaching trolley car was properly denied, several exceptions to the refusal of the judge to charge to the effect that if the driver of the stage saw the car coming at great speed while he was yet in a safe place and then urged on his horses in an attempt to cross the track, he cannot recover, are at the same time disposed of.

Six of the assignments of error are exceptions to refusals of the judge to charge the jury that " if they believe " certain facts which it is assumed have been proved, then " the plaintiff cannot recover," or in other words, was guilty of contributory negligence. The quoted words are the beginning and ending of each request.

In *Traction Co.* v. *Chenowith,* 29 *Vroom* 416, the late Chief Justice Beasley held that " how far the judge will apply the legal rules to the facts is a matter of discretion," and in disposing of a refusal to charge certain requests, said : " From this narration it is apparent that the trial judge was asked to tell the jury what inferences were to be drawn from certain facts if they found such facts to exist. No appeal was made to him to propound any legal principle ; all that he was to do was to declare that, postulating a certain condition of affairs, it was demonstrated that the plaintiff was, in whole or in part, the cause of his own injury. But how could the judge assert that such was the necessary conclusion from the facts assumed ? Simply because all men of common sense must

draw such inference from such premises. This being so, then there is, obviously, not the least ground for the theory that it was a judicial duty to express an opinion on the point, and this for the reason that the function in question was one that strictly belonged to the jury, and in the performance of which it is scarcely conceivable they could make a mistake." No language could more aptly express the reasons why the last-mentioned six exceptions cannot be sustained.

Exception was taken and allowed to the following part of the charge of the judge, to wit: "The trolley car and stage were both approaching the same point, and the driver of each had a right to propel his vehicle across the path on which the other was coming, but in the exercise of his right each of those persons, Rennard, the driver of the stage, and Grant, the driver of the trolley car, was bound to exercise reasonable care for his own safety and also for the safety of the other party; each was bound to exercise reasonable care to keep out of danger himself and not put the other party in danger either." There was no error in that part of the charge, and it is a very clear and concise statement of the law of this state relating to the rights and duties of those in control of vehicles and electric cars at crossings. *Traction Co.* v. *Chenowith, supra; Traction Co.* v. *Lambertson, supra; Traction Co.* v. *Scott,* 29 *Vroom* 682. But the charge contained much more on this subject than was excepted to. The judge further said : " You are to inquire whether these men, in exercising their right of crossing each other's path, exercised that degree of care which a reasonable and prudent person would be likely to exercise under the circumstances. If you find Rennard did not do that, then he is to blame for the accident; and if you find that Grant did not do that, then he is to blame for the accident, and according to the determination of the question as to where the blame lies, is to be your verdict. *    *    * If it was a pure accident, if neither of these men was to blame, then your verdict must be for the defendant, and for the reason that when the party injured and the party inflicting the injury, both by their negligence, have con-

tributed to the accident, the law says the damage must remain where it fell." We have quoted from the charge in addition to the words excepted to, in order to show that the law was so completely presented to the jury that it brings this case under the rule laid down in *Traction Co.* v. *Shaffery*, 31 *Vroom* 34, a case of collision between a trolley car and vehicle, where it was held that "when every rule of law pertinent to the liability of the defendant or the relative duties of the parties under the circumstances deducible from the evidence was laid before the jury, the judgment will not be disturbed."

Exception was also taken to the refusal of the judge to charge that the same or analogous rules are to be applied to a trolley road operating its cars on its own right of way, at grade crossings in the country, that are applied to a steam railroad. No authority in support of this contention has been cited, and we find no such doctrine held in this state or in any other. The difference in the modes of propulsion, the speed, the tremendous force of the motion and the impossibility to stop a train of cars on a steam railroad within a short distance, obviously require that the sound of the whistle and the ringing of the bell by the engineer shall, as a rule, be sufficient to exonerate from the charge of negligence. But we think no court has held that the sounding of the gong by the motorman of a trolley car, which can be stopped within a distance of forty or fifty feet, as the evidence of some witnesses in this case shows, will relieve from the charge of negligence in running at great speed by a public crossing, although the crossing may not be in the built-up portion of any town or city.

Exception was taken and allowed to the admission of the question, "Within what distance can you stop an electric car running at the rate of eight miles an hour?" There was no error in admitting this question, the witnesses being experienced motormen. The legal rule is stated as follows by Thomas in his work on *Negligence, p.* 1175 : "In an action for personal injuries resulting from being run over by a trol-

ley car, it is competent to show by a motorman within what distance a car could be stopped at the place of accident."

The remaining assignments are either merely formal or only the corollaries of those already considered.

We find no error in the record, and the judgment in each case should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, VAN SYCKEL, GARRISON, LIPPINCOTT, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 11.

*For reversal*—None.