[No. 3352.    Decided November 28, 1900.]

EDWARD ROBERTS, by EDWARD J. ROBERTS, *Guardian ad litem, Respondent, v.* SPOKANE STREET RAILWAY COMPANY, *Appellant.*

STREET RAILWAYS—COLLISION AT STREET CROSSING—NEGLIGENCE —SPEED OF CARS—WHEN QUESTION FOR JURY.

The question whether an electric car was running at a high, dangerous and excessive rate of speed, at the time of an accident at a street crossing, is one for the jury, and not a matter of law for the court to determine, when from the surrounding circumstances it appears that the car had defective appliances for its control, so that it could not be speedily stopped, that it was running at the rate of two and one-half miles per hour, at a street crossing, at which point it was passing another car on a parallel track, going in the opposite direction.

SAME—DUTY TO LOOK AND LISTEN.

Failure to look and listen before crossing the tracks of an electric railway in a public street, where the cars have not exclusive right of way, is not negligence as a matter of law.

SAME—CARS PASSING ONE ANOTHER.

The question of negligence in one car passing another at a street crossing is one of fact, in the light of all the evidence in the case.

SAME—INSTRUCTIONS.

In an action to recover for injuries resulting from a collision with an electric car at a street crossing, a requested instruction, that the verdict should be for defendant, if the motorman exercised ordinary care, after discovering the dangerous position of plaintiff, in endeavoring to stop the car with such equipment and apparatus as it had at the time, was properly refused, when one of the elements of negligence charged by the complaint was that the appliances for stopping the car were defective.

SAME—CONTRIBUTORY NEGLIGENCE.

A requested instruction that, if the plaintiff was guilty of an act of negligence which directly contributed to the injury, in a collision between himself and a street car at a crossing, or of any lack of ordinary care on his part, or an omission to do what he ought to have done under the circumstances, which act or omission directly contributed to the accident, it would defeat a recovery, was properly refused, for the reason that it attempted to refine too much the rule of ordinary care imposed on plaintiff.

CONTRIBUTORY NEGLIGENCE—CARE REQUIRED OF CHILDREN OF TENDER YEARS.

The question of the contributory negligence of plaintiff is ordinarily one of fact for the jury; and one of the things to be considered in relation to that question, in the case of an injury to a minor child, is his age and intelligence, the same care and caution as to placing himself in a dangerous position contributing to his injury not being required of a child of tender years as of an adult person.

SAME.

Whether or not a boy between ten and eleven years of age was guilty of contributory negligence in riding behind a street car in a position from which a car coming from the opposite direction on a parallel track could not be observed, and in suddenly darting in front of such approaching car at a street crossing, without looking or listening for its approach, was properly submitted to the jury, when the evidence shows that, even conceding negligence on his part, the car might have been stopped in time to avoid injury to him, were it not for the fact that the car was equipped with defective appliances for controlling it.

Appeal from Superior Court, Spokane County—Hon.
WILLIAM E. RICHARDSON, Judge. Affirmed.

*Stephens & Bunn,* for appellant.

*C. S. Voorhees, Rees H. Voorhees* and *Albert Allen,* for
respondent.

The opinion of the court was delivered by

REAVIS, J.—Plaintiff, by his guardian *ad litem,* com-
menced an action against defendant, a street railway com-
pany of Spokane, for personal injuries sustained through
negligence of the company, and alleged that Spokane was
a city with a population of over 30,000; that Riverside
avenue, where the injury occurred, was one of the principal
thoroughfares and public streets of the city, on which a
large amount of business was transacted, and across which
all the people of the city were accustomed and had a right
to travel; that, by reason of the public use of the street, it
was the duty of the defendant to use great care and caution
in keeping its cars and machinery in proper condition and
repair, as well as great caution in the operation and run-
ning of the cars over its tracks on Riverside avenue; that,
for a long time prior to the injury of plaintiff the defend-
ant carelessly and negligently used and operated a car upon
Riverside avenue, which was broken, defective, and out of
repair, in that the controller handle thereon—being the
handle used for the purpose of turning the current of
electricity off and on and controlling the car—was broken,
and on account of such defect the power of the motorman
operating the car, to control and regulate the current of
electricity and to control the car in case of an emergency,
was rendered uncertain; that, by reason thereof, it was
dangerous to operate such defective car upon the street;
that defendant was careless and ·negligent in operating

such car, in such dangerous and defective condition; that defendant at the time of the injury was running such car at a high and dangerous rate of speed along one of its tracks on Riverside avenue, meeting another car coming in the opposite direction on a parallel track, causing the two cars to meet and pass each other at a point where Riverside avenue is crossed by another public street, and which point of crossing was much frequented by public travel with teams, bicycles, and on foot; and that on the 8th of May, 1895, while plaintiff was lawfully travelling with a bicycle along, upon and across Riverside avenue, at the crossing of the streets at the time of the meeting of the cars, he was caught, knocked down, and run over by the defective car and severely injured. Defendant answered the complaint, denying its negligence and setting up that the injury, if any, received by plaintiff, was caused directly, proximately, and solely by his fault and negligence, and without any fault or negligence of defendant; and that the father and guardian *ad litem* and the mother of plaintiff were guilty of contributory negligence, causing the injury, in allowing the minor plaintiff to escape beyond their custody and control.

In mentioning the facts established at the trial, where the evidence is conflicting, only those facts will be considered which are substantially shown from the evidence adduced by plaintiff. At the time the injury occurred, the plaintiff was between ten years and ten years and nine months old. He was a boy of average capacity of that age, was accustomed to ride a bicycle in the streets of Spokane, and knew it was dangerous to collide with a street car in motion in the streets while riding his bicycle. Prior to the accident he was holding to the west-bound car, in riding his bicycle, until within about a block and a half of the place where the accident occurred. The east-bound car, which

collided with plaintiff, was running at a speed of about two
and a half miles per hour. If plaintiff had looked before
going on the track of the defendant in front of the east-
bound car, he could not have seen the car in time to avoid
the collision. The motorman on the east-bound car rang
his bell to salute the passing west-bound car prior to the
accident, but just how far distant does not appear. The
motorman did not see the plaintiff on the bicycle in time
to avoid the collision. The motorman had been in the
employ of the defendant company for about two years, and
was shown to have experience and capacity. He testified,
in substance, that the car had eight wheels, was about
thirty-two feet long, with motors of the Thompson-Hous-
ton system, and that it was controlled by an upright con-
troller in front, the reverse and controller lever resting on
the same stand, but not on the same staff—that is, on the
outside pipe; that there was one pipe for the controller
part; that the center staff was the controlling staff, known
as the "rheostat," which ran down to the bottom of the car
on the front end to a sprocket and down to the sprocket
wheel, so as to control the connections underneath, known as
the "rear connection," by a sliding contact; that on the
same stand was the controller lever; that the controller
lever had an upright handle; that there was a steel or wire
spindle that went down from the lever that came out on the
steel spindle; that each was worked by a loose handle, and,
the handle being held tightly, it would turn on the spindle,
and connect the sliding contact that was on the rheostat,
which was about a half circle and connected with a cable
and sprocket; that the purpose of the controller handle was
to start and stop the car by the connection underneath;
that the reverse lever was one that came out on the same
plan as the controller lever, only that it had no upright
handle to it; that there was an overhead switch above the

motorman's head, known as a "cut-off," to either connect the electricity with the motors or disconnect it; that there were brakes on the car; that the controller or controller handle was the appliance ordinarily used for starting and stopping the car; that it had an upright handle of brass and a steel or iron rod that went through and riveted underneath; that, at the time, the controller handle or upright grip that was used to turn on and off the electricity for the motors was wired on with a piece of baling wire, and that the rod of wire or steel that went down through the handle slipped from the staff; that the staff was brass, and there was a hole through the end of it, the rod went through that hole and was ordinarily riveted underneath, but in this car the constant working of the hard metal on the brass had worn the hole so that it allowed the rod to pull through, and it had thus been wired in order to hold it on, that is, to hold the rod in the proper place. The motorman saw the plaintiff about half way between the two tracks, a foot or two in advance of the front end of the car. He put his hand on the controller handle, released about a half turn of the controller staff to throw off the current, and at the same time put on the brake, but, in making the motion to throw off the current with the controller handle, the handle fell over and prevented his using the reverse lever. The reverse lever was nearly under the disabled controller handle. His next effort to throw off the electricity was by the overhead switch. The northeast corner of the car struck the boy's bicycle and knocked him forward three or four feet. He saw the boy fall, but could not specify at what distance he was from the car when he struck the ground. When the car was stopped, plaintiff was lying across the north rail and his left leg under the drive wheels of the car. The track at the time was dry and slightly inclined to be upgrade. The motor-

man stated that he made an immediate effort to stop the car when he saw the plaintiff. He says that as soon as he saw the plaintiff he made an effort to throw the current out of the car with the controller, and the handle broke—pulled out of the socket—because wired down.    Then he made an effort for the reverse lever, and it came in contact with the disabled controller handle.    He then threw the overhead switch and disconnected the current from the trolley wire to the motors.    At the time the plaintiff was struck, the front wheel of the car was on or near the west crosswalk or a little west of him.    With the controller in good condi-. tion, the motorman stated, "the car could have been stopped under the circumstances, considering the place and rate of speed, very nearly, instantly."    He also said the disabled controller prevented his operating it, and prevented him from operating the reverse lever successfully. He also said that the plaintiff would not have gone under the front end of the car had the controller been in sound condition.    The motorman was corroborated by other railway employees of experience in his statement that if the controller had been in sound condition the car, under the circumstances, could have been stopped almost immediately; some of them stating two or three feet as the limit. It was also shown that the defect in the controller had existed for some time, and was known to the officers of the company.    The plaintiff, in company with another boy, had been following the west-bound car, which was a box car, for some distance.    He and his companion had been riding behind the box car on their bicycles, each having hold of the end of the car, until within about a block and a half of the crossing where the accident occurred. . They had then ridden along the street some six feet north of the track, still following within a short distance of the west-bound car, until near the place of the accident, when the

companion of plaintiff turned south and crossed the two
parallel tracks, inviting plaintiff, by gesture or voice, to
follow him.    The plaintiff, a few feet behind the west-
bound car, turned, going south diagonally.    Plaintiff tes-
tified he was about six feet back of the west-bound car and
six feet towards the north, when his companion left him,
and he was about three feet behind the west-bound car
when he crossed the track southward.    When he got be-
tween the two parallel tracks he saw the east-bound car.
He says he was then going diagonally southwest, and he
immediately turned to the southeast to avoid the collision,
when he was struck by the east-bound car, and knocked to
the front of the car some little distance; that he was riding
at an ordinary rate of speed upon his bicycle, and had
slackened a little when he crossed the railway track, but
attempted to ride more quickly to cross ahead of the car.
The jury found that the car, after the collision, stopped
within fourteen feet.

1.    Counsel for defendant requested that the jury be
instructed to find for the defendant.    Of the several in-
structions requested by counsel for defendant, which were
refused by the court, mention will be made here of such as
are deemed material.    The court was requested to instruct
that the allegations of the complaint confined the alleged
negligent acts of the defendant to defective controller
handle, excessive, dangerous, and high rate of speed, and
cars passing at and on the intersection of the two streets,
and that the evidence disclosed that the car was not run-
ning at a high, dangerous, or excessive rate of speed.    The
court, of its own motion, instructed as follows:

"There are but three acts of negligence alleged which
you are allowed to consider:  First, the use and operation
on Riverside avenue of a car with a defective controller
handle;  second, running said car with such controller
handle at a high and dangerous rate of speed while meeting

another car going in an opposite direction on a parallel track,  *  *  *  third, permitting the cars to pass at a street crossing."

The refusal of defendant's instruction as tendered is not erroneous.    The court could not, under all the circumstances surrounding the accident, determine as a matter of law that the rate of speed was not excessive.

"It is well settled that at crossings, street cars and pedestrians have equal rights to the use of the streets; and it has been held in that connection that what is proper care and caution on the part of those in charge of cars to prevent accidents, is a question of fact in each case.  *Schulman v. Houston W. S. & P. F. Ry. Co.*, 36 N. Y. Supp. 439.  *  *  *  The facts in the present case, to say the least, fairly raised a question for the jury, whether the defendant was in the exercise of due and reasonable caution, when it permitted its south-bound car to pass the standing car at that public crossing and at such a rate of speed under the circumstances.   In forming a judgment upon that question,  there were  subsidiary questions, equally calling for consideration and judgment, such as: Was it the duty of the motorman, in the exercise of due and proper care, as he approached the standing car which would obstruct his view of passengers or pedestrians who might be waiting to pass, to sound his bell or gong as a warning?  And did he so sound his bell or gong?  And should he have had his car under control at this crossing? And did he have it under such control when approaching the standing car?   These facts and the inferences to be fairly drawn from them, under the principle before alluded to, it seems to me, clearly, were matters for the jury exclusively."   *Consolidated Traction Co. v. Scott,* 58 N. J. Law, 682 (34 Atl. 1094).

The evidence had disclosed defective appliances in the control of the car, so that it could not be so speedily stopped as where the machinery for operation was in sound condition.    Safety in the rate of speed is nearly always relative.

In *Penny v. Rochester Ry. Co.,* 7 N. Y. App. Div. 595 (40 N. Y. Supp. 172), it was held:

"As it was the defendant's duty to have its cars under control at street crossings, the jury had a right to consider the question whether the car could have been stopped more easily if the sand box, approved for use under such circumstances, had been filled with sand."

Whether the collision between infant plaintiff and the car was unavoidable or inevitable was properly submitted to the jury. Counsel also requested an instruction that, if the evidence showed that the bells and gongs had been sounded and the car was running at slow and moderate speed, and plaintiff, without-warning, under circumstances which were not reasonably to be expected, darted suddenly in front of or against or in close proximity to the car, then the defendant would be liable only for the use of ordinary care, after discovering the infant plaintiff, with such car, equipment, and apparatus as the defendant and its motorman then had for stopping the car, if the motorman did all he could with the car and equipment at that time, after discovering the position or danger of the infant plaintiff, then the verdict should be for the defendant. The element of error in this proposed instruction is that the duty of the defendant in the exercise of ordinary care was measured by the condition of the equipment and apparatus of the car at the time of the accident. It omits defective appliances for stopping the car.

Counsel requested the charge that, if the plaintiff failed to stop, look and listen, or take any reasonable precaution to ascertain whether a car was coming east, it was contributory negligence. The court gave the following instruction:

"You are instructed that the plaintiff is required to use ordinary care—that is, such care as an ordinarily prudent person would use under the facts and circumstances detailed in this case, taking into consideration the age, capacity, knowledge, and experience of the infant plaintiff; and he is required to use the same care as the average careful and prudent boy of his age, capacity, prudence, and knowledge. If you find that he possessed such knowledge, capacity, and experience, and knew it was dangerous to pass immediately in front of a moving street car, and that he attempted to do so without looking and listening, when, if he had done so, he would have discovered the car in time to have avoided the accident complained of, the presumption is that he was guilty of contributory negligence."

It is not negligence *per se* if it is not shown that one looked and listened in crossing a street railway. The degree of care required in crossing a highway and steam railway, in looking up and down the track, is not necessarily the test of care required in crossing the track of a street railway on a public street. Failure to look and listen before crossing the tracks of an electric railway in a public street, where the cars have not the exclusive right of way, is not negligence as a matter of law. *Robbins v. Springfield R. R. Co.,* 165 Mass. 30 (42 N. E. 334); *Consolidated Traction Co. v. Scott, supra; Shea v. St. Paul City Ry. Co.,* 50 Minn. 395 (52 N. W. 902).

Counsel for defendant also requested the instruction that if the plaintiff was guilty of an act of negligence which directly contributed to the injury, or of any lack of ordinary care on his part, or an omission to do what he ought to have done under the circumstances, which act or omission directly contributed to the accident, it would defeat a recovery. We think the instruction attempts to refine

the rule of ordinary care which was imposed on the plaintiff. Defendant objects to the following instruction given:

"That if you find from the evidence that the plaintiff was injured by one or more of defendant's cars, at or near a street crossing, at the time of the passing of another car, it is for the jury to determine from all the evidence, taking into consideration all of the circumstances of the case, whether it was negligence for the defendant motorman operating the car which did the injury to pass such other car at that place and at the time at which you find from the evidence he did that."

As we have seen, the question of negligence in one car passing another at a street crossing is one of fact, in the light of all the evidence in the case.

2.   The railway company was negligent in the operation of the car. The controller handle was defective, and the car could not be stopped with the same facility as if the appliance had been sound. But the defendant alleges contributory negligence upon the part of the infant plaintiff— that plaintiff placed himself in a dangerous position contributing to his injury. The question of the contributory negligence of plaintiff is one of fact and for the jury, unless the undisputed facts are so clear that all reasonable inferences point to one conclusion. It was observed in *Consolidated Traction Co. v. Scott, supra,* which case, in its facts, is somewhat similar to the one at bar:

"There is another element to be considered, as affecting judicial action upon the question of contributory negligence in this case, and one that, I think, clearly makes it a question for the jury alone, and that is the fact that the plaintiff's intestate was a boy of tender years. He was described as a bright boy, but he was so young that naturally his powers of reason and judgment could be but partly developed. He had not passed far beyond the age of seven

years.   *   *   *   Where there is a question whether the child is of sufficient age and discretion to be capable of some care for his own safety, the question of his capacity and its degree is for the jury.   *   *   *   And when a child has reached the age of discretion, and is considered *sui juris,* as a matter of law, the degree of care and caution required of him will be no higher than such as is usually exercised· by persons of similar age, judgment and experience; and whether that degree of care and caution has been exercised by the child in a given case is usually, if not always, a question of fact for the jury.   4 Am. & Eng. Enc. Law, 46, and cases cited."

It was said in *Redford v. Spokane Street Ry. Co.,* 15 Wash. 419 (46 Pac. 650), that when the defendant's negligence is the proximate cause of the injury, while that of the plaintiff is only a remote cause or a mere condition of it, the defendant is still liable.   In *Mitchell v. Tacoma Railroad & Motor Co.,* 9 Wash. 120 (37 Pac. 341), the following instruction of the superior court was approved:

"In determining whether the plaintiff or defendant was guilty of negligence, if either of them was, you should take into consideration the age and intelligence of the plaintiff. The law does not require the same degree of caution from a child of tender years as would under like circumstances be required of an adult; but the degree of caution required is to be determined by the maturity and capacity of the child.   So that what you might consider under the same or similar circumstances would be negligence on the part of a grown person would not necessarily be so considered by you in case of a child of tender years."

It was also ruled in that case that there was sufficient evidence to refuse a non-suit when the facts shown were· that the gripman did not keep such a look-out as the circumstances demanded, nor give any warning of approach, and that after discovering the child on the track the car

22—23 WASH.

might have been stopped sooner if the brakes had been in proper condition; and it was observed:

"The mere circumstance that the car ran an unusual distance before it was stopped was some evidence either of improper management or that it was out of repair, or that the brakes were defective."

No negligence on the part of the parents was shown. The real question here arises upon the motion to instruct for the defendant upon the ground of contributory negligence by the infant plaintiff; and, conceding there was want of ordinary care in the plaintiff preceding the collision, did it contribute to the injury, or was it a mere condition before the accident? We conclude that the important inquiry determinative of this controversy is, Was the negligence of the defendant the proximate cause of the injury? The facts shown by the plaintiff have been given, and do all the inferences arising from them show to all reasonable minds that want of ordinary care on the part of the plaintiff contributed to his injury? We have seen that it was not negligence *per se* for plaintiff to pass from behind the west-bound car for the purpose of crossing the south track. In the case of *Thompson v. Salt Lake Rapid Transit Co.*, 16 Utah, 281 (52 Pac. 92, 40 L. R. A. 172, 67 Am. St. Rep. 621), the facts are very similar to those in the case under consideration. There the defendant sent out a defective street car, and maintained that the plaintiff was negligent in crossing the track in front of the car, and that in such case it was the duty of the defendant, after discovering the dangerous situation of the plaintiff, caused by his own negligence, only to exercise all reasonable care and diligence at his command at the time of the injury, and that when the motorman did all he could to stop the car, although its brakes were

defective, the defendant could not be held liable.    Of this the court observed:

"The result of such a doctrine would be that under such circumstances, when the defendant discovered negligence in a plaintiff, he could legally excuse the exercise of his own want of reasonable care, by showing that its appliances and brakes were in such a wretched condition at the time, on account of its previous and continued negligence, that it was incapacitated from preventing the injury complained of at the time by the use of reasonable care.   *   *   * If such rules were applicable to contributory negligence, his [plaintiff's] safety in crossing a street where street cars were operated, with his right to recover damages in case of negligence, would largely depend upon the option of the company to keep its appliances in good repair."

The question of contributory negligence, under all the circumstances in the case, was, we think, properly submitted to the jury, and its verdict must be conclusive.

Affirmed.

Fullerton, J., concurs.

Dunbar, C. J. (concurring).—I concur in the result. I think the action of the respondent constituted contributory negligence as a matter of law, and that, if there had been no fault on the part of the appellant which was the proximate cause of the injury, the respondent could not recover.   But whatever the fault of the appellant may be termed—whether "comparative negligence" or "wilful negligence"—companies employing dangerous agencies like electricity must be held to the highest degree of care, not only in operating their cars, but in what is of even more importance, viz., in furnishing their servants with suitable equipment for properly operating the cars; for, without a compliance with this first and most important re-

quisite, the skill and care of the operators would be of little avail. In this case, if the controller handle had been in perfect order and the motorman had not been driven to the necessity of finally resorting to the over switch to throw off the electricity, thereby losing precious time, the injury would probably have been averted. The imperfect condition of the controller handle was known to the company, and the operation of the car with this glaring defect in an appliance so important and upon which the safety of the travelling public so largely depends placed the company in the attitude of operating its car in wilful disregard of the rights of the travelling public; and such acts should be held to be willful negligence, in their application to the party injured.