FREDERICK WILLIAM KOCH, and others *vs.* THE
NORTH AVENUE RAILWAY COMPANY OF BALTIMORE
CITY.

*Street railways—Defect in Charter cured by Subsequent
Legislative Recognition—Construction of City Ordinance
Giving certain Rights to a Street-railway Company—Tracks
of other Roads—Use of Electricity as a Motive power to
Street cars—New servitude—Abutting owners—Act of
1890, ch. 370, giving Power to the Mayor and City Council
of Baltimore to Regulate the Use of the Streets by Rail-
ways—Elevated railways—Partial invalidity of Ordi-
nance.*

Where the Legislature by a special Act, recognizes a corporation
as a valid existing corporation, and authorizes it to exercise
corporate rights, the effect of such legislation is to cure all
charter defects in the original certificate under which the com-
pany was organized.

The first section of an ordinance of the Mayor and City Council
of Baltimore entitled "An ordinance to authorize the construc-
tion of city passenger railway tracks by the North Avenue Co.
of Baltimore City on North Avenue to Guilford Avenue," pro-
vides that "the North Avenue Co. of Baltimore City be, and
it is hereby, authorized to lay down and construct double iron
railway tracks for the purposes of its business, and in connection
with double tracks now authorized to be constructed by it on
North Avenue to McCullough Street," &c.   The third section
reads as follows: "That it shall be lawful for said North Avenue
Co. of Baltimore City to use the tracks now laid on North
Avenue by the Baltimore City Passenger Railway Co.," &c.;
"in the manner and to the extent to which it is lawful for the
Mayor and City Council of Baltimore to grant the right to use
said tracks; and in any case in which the said railroads are
entitled to the exclusive use of said tracks, and the North Ave-
nue Co. cannot agree with them for the exclusive use of their
said tracks, then it shall be lawful for the North Avenue Co.

Koch, *et al. vs.* North Avenue Railway Co.

to lay its rails inside and outside of the tracks of other roads." HELD: ·

1st. That the words "it may be lawful" as used in said third section, are to be construed in their natural and ordinary sense, as being permissive.

2nd. That said third section was passed for the purpose of giving the North Avenue Co. the right to use the existing tracks of other companies, and if the city authorities had no power to authorize the joint use of these tracks, and no agreement could be made with the companies for their use, then the North Avenue Co. was authorized to lay its rails inside and outside of such tracks.

3rd. That the sole object of this section was to grant these additional rights to the North Avenue Co., and not to restrict or qualify in any manner the right which had been granted by the first section to lay tracks of its own on North avenue, should the North Avenue Co. deem it best to do so.

A street is a way set apart for public travel, and the use of electricity for propelling street cars is but a new and improved motive power, in no manner inconsistent with the uses and purposes for which streets were opened and dedicated as ways for public travel.

The Act of 1890, ch. 370, confers upon the Mayor and City Council of Baltimore full power to authorize the use of electricity for propelling street cars, and this use does not impose a new servitude upon the streets so as to entitle abutting lot owners to additional compensation.

Section 186 of Article 23 of the Code, provides that "nothing in this Article shall apply to or authorize the construction of any elevated railroad, or of any other railroad, except a surface road; * * * * and no elevated railroad shall be constructed in or through the City of Baltimore, or in or through any of the counties of the State, except under a special charter of the General Assembly." HELD :

That an Ordinance of the Mayor and City Council of Baltimore, giving to a surface railroad company permission to construct an elevated railroad upon a fractional part of its route, in order to overcome certain obstructions, is to that extent within the prohibition of said Article and void, but such invalidity does not impair the other rights conferred upon said company by the ordinance.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, FOWLER, and McSHERRY, J.

*E. J. D. Cross,* and *Bernard Carter,* (with whom were *Hugh L. Bond, Jr.,* and *John K. Cowen* on the brief,) for the appellants.

*Francis K. Carey,* and *Fielder C. Slingluff,* (with whom was *Julian I. Alexander* on the brief,) for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is a bill by abutting lot owners to enjoin the defendant, a street railway company, from construct-ing its road on North avenue; and the questions are:

*First.* Is the defendant a lawfully incorporated com-pany?

*Secondly.* If incorporated, had it the legal right to *lay tracks of its own outside of the* tracks already laid on said avenue by other railway companies?

*Thirdly.* Have the city authorities the power to author-ize the defendant to use electricity as a motive power in propelling its cars?

*Fourthly.* Is the elevated structure proposed to be built down North street an "elevated road" within the meaning of the statute which provides that no elevated road, or any other railroad than a surface road, shall be built in or through the City of Baltimore, except under a special charter granted by the Legislature? Sec. 186, Art. 23 of the Code. First, then, as to the charter. The defendant was organized under the General Rail-road Law, which provides, that the certificate of incor-poration "shall specify the names of the places of the

*termini* of the road, and the county or counties, city or
cities, through which such road shall pass." Sec. 159,
Art. 23, Code. The certificate filed by the defendant
states, that "the corporation so formed, is a corporation
for the purpose of constructing and running a passenger
railway in the City of Baltimore, the whole of the line
of said road being located in the City of Baltimore, and
the *termini* of the said road being therein." This cer-
tificate contains the indorsement of one of the Judges of
the Supreme Bench of Baltimore City that "the said cer-
tificate is in conformity with the provisions of the law
authorizing the formation of said corporation." Under
this certificate, the defendant was organized, and under
it the greater part of its road has been built. The con-
tention now is, that this certificate is fatally defective,
because it does not designate with sufficient certainty
the *termini* of its road. In answer to this, it is quite
sufficient to say, that if the certificate was defective in
this respect, without meaning, however, so to decide,
this defect is fully cured by the Act of 1890, ch. 217.
This Act is entitled "An Act to amend the charter of the
North Avenue Railway Company of Baltimore City, by
authorizing it to lease, purchase, or aid other railroads
or to consolidate with the same;" and then it provides
"that the charter of the North Avenue Railway Com-
pany be, and the same is hereby, amended so that here-
after said company shall be authorized and empowered
to consolidate with such other roads as it may cross or
connect with, and to aid such roads in the construction
and extension of their roads, by means of subscription to
their capital stock or otherwise, and to lease or purchase
such road or roads." This Act not only recognizes
the validity of the defendant's charter, but authorizes it
to exercise certain rights and franchises, such as a law-
fully incorporated company only could exercise. And,
this being so, we take it to be well settled, that where

226        MARYLAND REPORTS.

Koch, et al. vs. North Avenue Railway Co.

the Legislature, by a special Act, recognizes a corporation as a valid existing corporation, and authorizes it to exercise corporate rights, the effect of such legislation is to cure all charter defects in the original certificate under which the company was organized. This was decided in *Basshor & Stebbins vs. Dressel*, 34 *Md.*, 503, where the objection was made to the certificate purporting to incorporate a *Mining & Manufacturing Company* as *one corporation*, on the ground that the law as it then stood, made no provision for incorporating two distinct companies in one charter. By a subsequent Act, however, the company was empowered to increase its capital stock, or to make calls or assessments upon the present capital stock, and the Court said: "We regard this Act as a legislative recognition of the validity of the existing corporation, and as having the effect to cure the defect, if any such existed, in the original certificate combining the two kinds of corporations in one charter." And we may add, that this is the well settled law in this country. *The Society for the Propagation of the Gospel, &c. vs. The Town of Pawlet, &c.*, 4 *Peters*, 480; *The Kanawha Coal Co. vs. The Kanawha and Ohio Canal Co.*, 7 *Blatchford*, 391; *Bow vs. Allenstown*, 34 *N. H.*, 351; 1 *Morawetz on Private Corporations, sec.* 20.

And this being so, we agree with the Court below, that the effect and operation of the Act of 1890 was to dispense with any more specific naming of the places of the *termini*, than was contained in the certificate, and leaving to the Mayor and City Council, under their general power of control and regulation of the streets, the right to define the route of the road and *its termini*.

Being, then, lawfully incorporated, the question is whether the defendant has the legal right to construct its own tracks outside of the existing tracks on North Avenue. And this depends upon the construction of ordinance No. 23, known as the "North Avenue Ordinance." This

ordinance is entitled "An ordinance to authorize the construction of City Passenger Railway tracks by the North Avenue Company of Baltimore City on North avenue to Guilford avenue." And section one provides that "the North Avenue Railway Company of Baltimore City be, and it is hereby authorized to lay down and construct double iron railway tracks for the purposes of its business, and in connection with double tracks now authorized to be constructed by it on North avenue to McCullough street," etc.

That this section, standing alone, authorizes the defendant to construct outside tracks of its own, cannot, it seems to us, be questioned. It cannot be questioned, because the right to do so is granted in terms which exclude all contention. But this right, it is said, is not only restricted, but actually taken away by the third section. Now what is this section? It reads as follows: "That it shall be lawful for the said North Avenue Railway Company of Baltimore City, to use the tracks now laid on North avenue by the Baltimore City Passenger Railway Company" * * * "in the manner and to the extent to which it is lawful for the Mayor and City Council of Baltimore to grant the right to use said tracks; and in any case in which the said railroads are entitled to the exclusive use of said tracks, and the North Avenue Railway Company cannot agree with them for the joint use of their said tracks, then it shall be lawful for the said North Avenue Railway Company to lay its rails inside and outside of said tracks of other roads."

This section, it is argued, makes it obligatory upon the defendant to use the tracks of other railway companies on North avenue, provided the city authorities have the power to grant such right; and if they have no such power, and the defendant is unable to agree with these companies for the joint use of their tracks, then the defendant is authorized to lay its rails inside and outside of the

tracks of such companies; and that under no circumstances, has it the right to lay *outside tracks of its own* on North avenue; in other words that this right if granted by the first section, is revoked by implication by the third section.    This construction cannot be supported, it seems to us, unless we import into this section language not to be found in it, or construe the language used in a sense altogether different from its plain and obvious meaning. The words *"it may be lawful"* as here used, are to be construed in their natural and ordinary sense, as being *permissive.*  "They are words," as was said by Lord CAIRNS in *Julius vs. Lord Bishop of Oxford,* 5 *Appeal Cases,* 214, "merely making that legal and possible which there would otherwise be no power, right, or authority to do. They confer a faculty or power, and they do not of themselves do more than confer a faculty or power."    The words "it shall be lawful" being, according to their natural meaning *permissive* words only, it lies upon those who contend that an obligation exists to exercise this power, to show in the circumstances of the case, something which creates this obligation.

It can hardly be said there is anything in the objects or purposes for which this section was added to the ordinance to justify the construction of these words in any sense other than their natural and ordinary sense.    By the first section the defendant was only authorized to lay outside tracks of its own on North avenue; but being an electric street railway, operated by what is known as the *"overhead system,"* there are certain mechanical advantages to be derived by the occupation of the centre of a broad street like North avenue. · The construction of its tracks on the slope of the street toward the curb-line would tend to throw the weight of the car on the outside wheels, and thereby make an imperfect contact for the *trolley wheel* on the *trolley wire.*    And the third section was passed for the purpose of giving to the defend-

ant the right to use the existing tracks of other companies, and if the city authorities had no power to authorize the joint use of these tracks, and no agreement could be made with the companies for their use, then the defendant was authorized to lay its rails *inside and outside of such tracks.* The object, and sole object, of this section was, it seems to us, to grant these additional rights to the defendant, and not to restrict or qualify in any manner the right which had been granted by the first section to lay tracks of its own on North avenue, should the defendant deem it best to do so.

And this brings us to the question as to the power on the part of the city authorities to permit the use of electricity for propelling street cars. This question comes before us for the first time, but it has been fully considered by the highest Courts in other States, and these Courts, without a single exception, have held it to be a *legitimate use* for this purpose. It was so held by the Supreme Court of Rhode Island in *Taggart vs. Newport Street Railway Co.*, 16 *R. I.*, 668; and by the Court of Chancery of New Jersey in *Halsey vs. Rapid Transit Street Railway Co.*, 47 *N. J. Eq.*, 380, and by the Circuit Court of the United States for the Eastern District of Arkansas, in *Williams vs. City Electric Street Railway Co.*, 41 *Federal Rep.*, 556; and still later by the Supreme Court of Pennsylvania in *Lockhart vs. Craig Street Railway Co.*, 139 *Penna. St.*, 419. Without quoting at length from these several decisions, it is sufficient to say, they proceed on the principle that a street is a way set apart for public travel, and that the use of electricity for propelling street cars is but a new and improved motive power, in no manner inconsistent with the uses and purposes for which streets were opened and dedicated as ways for public travel. Now the Act of 1890, chapter 370, confers upon the Mayor and City Council full power to authorize the use of electricity for

propelling street cars; and as this use does not impose a new servitude upon the streets so as to entitle abutting lot-owners to additional compensation, the appellants, it is clear, are not entitled to any relief in this respect.

The only remaining question then to be considered, is, whether the elevated structure which the ordinance authorizes the defendant to build between Chase and Lexington streets, is an elevated road, within the meaning of sec. 186, which provides that "nothing in this Article shall apply to or authorize the construction of any elevated railroad, or of any other railroad except a surface road; and no elevated railroad shall be constructed in or through the City of Baltimore, or in or through any of the counties of the State, except under a special charter of the General Assembly." And this, it seems to us, is the only question about which there can be any real contention in this case. There is, of course, a broad distinction between an elevated railroad and a surface railroad. A passenger street railway constructed on the surface of the street is a legitimate use of the street, but the construction of an elevated railroad, it has been decided by the Court of Appeals of New York, not to be a legitimate use of the streets, and that its construction imposes a new servitude, for which the abutting lot-owners are entitled to additional compensation. We refer to these decisions merely for the purpose of showing that although there could be no sound objection to the incorporation of street railways constructed in the ordinary manner, the Legislature has seen fit to declare that no elevated road shall be built except under a special charter granted by the General Assembly, and we are not to be understood as committing ourselves in any manner to the principles on which these decisions are based, because the question is not now before us. But, be this as it may, whatever may have been the reasons, the statute provides in express terms, that no such road

Koch, *et al. vs.* North Avenue Railway Co.

shall be built except under a special charter. So the question is whether this elevated structure is an elevated road, within the legislative prohibition? And this depends upon the nature and character of the structure itself. What then is this elevated structure, and how is it to be built? The proof shows that it is to be built with vertical pillars or columns, upon which are to rest longitudinal girders, with transverse girders or cross beams, all to be built of iron or steel. It is to be elevated *twenty feet above the surface of the street,* and to extend from a point between Chase and Eager streets to a point between Saratoga and Lexington streets to the *very centre of the City.* It is to be built upon the same plan as the elevated roads in New York City. Such a structure cannot certainly be said to be a surface road, but must, it seems to us, to all intents and purposes, be considered an elevated road within the meaning of the statute. But then, it is said it is elevated above the surface of the street only for the purpose of overcoming certain engineering difficulties, and that the elevation begins only when certain obstructions on the surface of the street necessarily require it, and that the descent to the surface is made as soon as these obstructions are overcome. Now what are these obstructions? The defendant had constructed its surface road on North avenue, which before the annexation of the Belt was the extreme northern boundary of the city till it reached North street, and having reached that point, it proposes to extend its road down North street to the City Hall. It finds, however, upon the bed of North street the tracks of the Northern Central Railway Company, and to overcome these obstructions it is necessary to build an elevated road twenty feet high from a point between Chase and Eager streets to a point between Saratoga and Lexington streets a distance of *three-quarters of a mile.* Now, if the defendant's contention be sound, and these obstruc-

tions extended from North avenue to the City Hall, then the city authorities could authorize it to build an elevated road all the way from North avenue down North street to the City Hall. And if so, what becomes of the statutory prohibition which says that no elevated road shall be built *in or through the city*, except under a *special charter* granted by the General Assembly. Such a construction would be, it seems to us, against both the letter and spirit of the statute.

Then, again, it is said that this elevated structure is but a fractional part of the defendant's road. This may be true, but the fact that the defendant's road along North Avenue extends to the extreme western limits of the city, is not the test by which the question is to be determined. The question is one, after all, to be determined by the nature and character of the structure itself. If the argument be sound, then the Mayor and City Council could authorize any street railway to build an elevated road in any of the streets of the city. So, however necessary this elevated structure may be to the down town extension of the defendant's road, and whatever advantages are thereby to accrue to the public, as affording a more convenient and rapid transit from one part of the city to the other, these are matters for the consideration of the Legislature, which alone has the power to authorize the construction of an elevated road *in or through the city*. The invalidity of Ordinance No. 23 in this respect, however, does not invalidate the entire ordinance. Other sections deal with matters in no manner connected with the construction of this elevated road. The first section grants to the defendant, as we have said, the right to lay outside tracks of its own on North avenue, and this right is in no manner impaired by the invalidity of the fifth section, purporting to authorize the construction of the elevated road. But as this bill is filed by abutting lot-owners on North avenue

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

to restrain the defendant from constructing its road outside of other tracks on said avenue, and as this is the relief prayed, it follows that the injunction asked for was properly refused.

*Order affirmed.*

(Decided 28th January, 1892.)