## The Citizens' Street Railway Company v. Damm.

[No. 3,203. Filed November 20, 1900.]

Street Railways.— *Personal Injuries.* — *Complaint.*—A complaint against a street railway company for personal injuries charged that plaintiff and her husband were riding in a buggy, and, in attempting to cross defendant's track, their horse took fright, and became unmanageable; that when the horse was on the track in such frightened condition a car was approaching at a distance of from 200 to 400 feet, and plaintiff was in full view of the motorman; that plaintiff could not extricate herself from the buggy, and the horse and buggy could not be removed from the track, and that the car was run against plaintiff, without any attempt on the part of the servants in charge thereof to check the same, and injured her. *Held,* that the complaint stated a cause of action, and a demurrer thereto was properly overruled. ' *pp. 512-515.*

Same.—*Special Findings.* —*Verdict.*—Answers to interrogatories in an action for personal injuries caused by collision with a street car showed that plaintiff and her husband were out driving, and, in attempting to cross defendant's track, their horse became frightened

and balked on the track; that when the buggy stopped on the track the car was more than 100 feet away, and the motorman was in a position to see the peril of plaintiff, and could have stopped the car in time to have prevented the collision; that before the collision the motorman sounded the gong and turned off the power, then released the brake and allowed the car to proceed and strike the plaintiff; that plaintiff could have seen the car before attempting to cross the track, and stopped, and thus avoided the collision, if she had looked. *Held,* that the answers are not in irreconcilable conflict with a general verdict for plaintiff. *pp. 515-520.*

APPEAL AND ERROR.—*Record.*—*Marginal Notes.*—*Evidence.*— Questions depending upon the evidence will not be considered on appeal, where the evidence covers over 500 pages of typewritten matter, and the record contains no marginal notes, as required by rule thirty of the Appellate Court. *pp. 520, 521.*

From the Henry Circuit Court. *Affirmed.*

*J. W. Ryan, W. A. Thompson* and *M. E. Forkner,* for appellant.

*J. N. Templer, C. C. Ball, E. R. Templer, R. S. Gregory, A. C. Silverburg* and *O. J. Lotz,* for appellee.

WILEY, J.—Appellee was plaintiff below and sued appellant to recover damages for injuries received by reason of · appellant's alleged negligence. The amended complaint, which was in a single paragraph, avers that appellee and her husband were riding in a buggy drawn by one horse and were crossing Main street where it intersects Plum street in the city of Muncie; that appellant owned and operated a line of street railway on Main street; that while so driving in a careful, cautious, and proper manner, the horse attached to the buggy in which they were riding became frightened, reared, pitched, and became unmanageable, and that appellee and her husband were unable to control the horse, and it was about to run away; that thereupon appellee's husband got out of the buggy and took hold of the horse by the bits in order to manage and hold him; that said horse being unmanageable, passed out, upon, and over appellant's track, while they were exercising all their powers to control him,

but were unable to do so; that when said buggy was upon said track and said horse in such frightened condition, one of appellee's cars propelled by electricity was approaching appellee in the buggy, at a distance of 200 to 400 feet from where she was upon the track, and the said buggy and appellee were in full view of appellant's motorman and servants in charge of said car; that appellee and her husband by "calls, screams, and loud hallooing and waving of hands at, to, and towards defendant's said motorman, employes, and servants in charge of said car demanding them to stop said car." It is also averred that the space between said approaching car and said buggy, where it was stopped on the track, was an open and level street in full view of said employes, so that they could and did see the condition appellee was in, and that said horse and buggy were on the track most of the time, and when not on, so close to it that the car could not pass without striking them; that said servants could have seen that said horse and buggy were on the track; that the horse was frightened and unmanageable; that she could not extricate herself from said buggy; that said horse and buggy could not be removed from the track, and that in total disregard of appellee's peril, appellant, by its servants, ran said car at a speed of ten miles per hour, without checking or attempting to check the speed, against and upon said horse, buggy, and appellee. It is further alleged that she was unable to get out of the buggy and was unable to get the horse and buggy off the track so as to avoid a collision with the car. The complaint described at great length and with particularity the various injuries appellee received from the collision, and avers that such injuries were received without any fault or negligence on her part or on the part of her husband.

A demurrer for want of facts addressed to the complaint was overruled. Appellant answered by denial. Trial by jury resulted in a general verdict for appellee for $2,250.

The jury also found specially, as to certain facts, by answers to interrogatories. Appellant moved for judgment on the answers to interrogatories, for a new trial, and for a *venire de novo,* and each of these motions was overruled.

It is proper to say that there were two trials of this cause below. The first trial resulted in a general verdict for appellee, and with the general verdict the jury found specially as to certain facts by answers to interrogatories. After the return of the verdict and the answers to the interrogatories, appellant moved for a new trial and for judgment on the answers to interrogatories notwithstanding the general verdict. The former motion was sustained and the motion for judgment was overruled. All these adverse rulings, including the overruling of the motion for judgment in the first trial are assigned as errors. Appellant's learned counsel have presented their views of the law questions involved in this appeal in voluminous briefs, and most of their discussion is addressed to the question of appellee's contributory negligence. The argument embraces three pivotal propositions: (1) The sufficiency of the amended complaint; (2) the sufficiency of the evidence to support the verdict, and (3) the overruling of the motion for judgment on the answers to interrogatories.

We are not convinced by the argument of counsel that the complaint is defective. The evident theory of the complaint is that appellee was placed in an unexpected and hazardous position by circumstances over which she had no control, from which she could not extricate herself, and that appellant's servants in charge of the car saw her in such condition in sufficient time to have averted the accident by the exercise of ordinary care. It is shown that the accident occurred at a street crossing, and in this connection it must be remembered that the street car company at such point has no superiority of right over that of a person about to cross the track at such point. We think the facts stated in the complaint bring the case within the rule, so far as the suf-

ficiency of the complaint is concerned, that where one person sees another in a position of peril from which he is unable to extricate himself with reasonable care, it is the highest duty of such person so to act as not to increase the peril, and if he does act in a manner to increase the danger with full knowledge of the facts, it is negligence for which he may be required to respond in damages. See *Lake Erie, etc., R. Co.* v. *Juday,* 19 Ind. App. 436, and cases there cited. See, also, the recent care of *Elwood, etc., St. R. Co.* v. *Ross,* (Ind. App.) 58 N. E. 535. Here the complaint charges that the servants of the appellant saw the danger in which appellee was placed, and yet continued to run the car at full speed and made no effort either to check or to stop it. This case, so far as the facts charged, is similar in all essential respects to the case of *Muncie St. R. Co.* v. *Maynard,* 5 Ind. App. 372, in which it was held that those in charge of an engine upon a street car track seeing a team of horses near the track showing signs of fright, must, in order to relieve the company from liability, heed the danger, slacken speed, and if necessary to avoid injury, stop the train. See, also, *Louisville, etc., R. Co.* v. *Stanger,* 7 Ind. App. 179. See, also, *Chicago, etc., R. Co.* v. *Nash,* 1 Ind. App. 298. The demurrer to the complaint was properly overruled.

We will next consider the overruling of appellant's motion for judgment on the answers to interrogatories. The jury found that appellee was driving with her husband for her health; that she was pregnant with child, and had been in that condition for three months; that they drove from Plum street, which intersects Main street, and attempted to cross the latter street along and upon which appellant owns and operates a street car line; that immediately before the collision, the horse appellee's husband was driving balked and was rearing and jumping upon or near the track; that appellee could not have gotten out of the buggy without great danger of receiving bodily injury; that the appellant's employes could have stopped the car in time to have pre-

vented the collision, if they had used reasonable and ordinary diligence; that when the buggy stopped on the track the car was 125 to 150 feet away, and that appellant's servants could have seen the buggy by the exercise of reasonable diligence; that the said servants checked the speed of said car, but did not stop it; that said servants were guilty of negligence in failing to stop the car and thus have prevented the collision; that as a result of the collision appellee was injured in the head, arm, side and abdomen; that she has not recovered from her injuries; that she was damaged in the sum of $2,250; that the horse and buggy were dragged by the car twelve to fifteen feet; that the motorman in charge of the car was in a position to see the peril appellee was in for more than 100 feet immediately before the collision; that appellee was not guilty of contributory negligence; that appellee was about twenty-seven years old, possessing good eyesight, good hearing, and possessing all of her natural senses unimpaired; that appellee and her husband, as they approached Main street from Plum street were driving in a trot; that appellee looked west and her husband looked east (the car was approaching from the west); that appellee could have seen the approaching car if she had looked; that she could have heard the car if she had listened; that if she had looked to the west before attempting to cross the track and stopped, she could have avoided the collision; that by thus stopping she would have been delayed from one to two minutes; that appellee knew that appellant operated a line of street cars on said Main street, and ran its cars thereon regularly; that the buggy did not pass over the track before the accident; that appellant's servants immediately before the accident sounded the gong, turned off the electric current and materially reduced the speed; that after so reducing the speed the brakes were released, and the car proceeded without a reapplication of the power while the buggy was on the track, and that appellant's negligence consisted in failing to stop the car after the servants in charge of it saw that appellee's horse was frightened.

It is earnestly argued that appellant was entitled to judgment on the answers to interrogatories, notwithstanding the general verdict, for the reason that the facts specially found are antagonistic to and in irreconcilable conflict with the general verdict, in that they show that appellee was guilty of negligence which contributed to her injury. If the special finding of facts does show that appellee was negligent, then it would overcome the general verdict and be of controlling influence, for the general verdict finds that she did not contribute to her injury by her own negligence. It is urged that it was negligence for her while riding with her husband to undertake to cross the street car track on Main street, under the facts specially found. Our attention has been called in argument to the rigid and stringent rule governing crossing steam railway tracks that intersect highways and streets, by persons in vehicles and on foot, and many authorities have been cited in support of the rule. That rule, however, is not applicable here, for the reason that persons about to cross a street car track in a city at the intersection of streets are not held to that high degree of care required of persons in crossing steam railway tracks. · The right of crossing the street is equal as between a street car and a citizen; neither has a superior right to the other. The right of each must be exercised with due regard for the right of the other, and in such careful manner as not reasonably to abridge or interfere with the right of the other. This equality of right, however, does not absolve one who is about to cross the tracks from the duty of taking proper precautions to avoid accidents. Booth on St. Railway Law, §304; *O'Neil* v. *Dry Dock, etc., St. R. Co.,* 126 N. Y. 125, 29 N. E. 84; *Buhrens* v. *Dry Dock, etc., St. R. Co.,* 53 Hun 571, 6 N. Y. Supp. 224. Under what circumstances a person, either walking or riding in a vehicle, may safely attempt to cross a street car track in front of a car must be determined by facts which vary so much in different cases that courts have not attempted to establish specific rules on the subject. But

there have been some decisions resting upon particular facts which illustrate the general rule as to the degree of care that must be exercised. Thus it was held in New York that an attempt to pass in front of a street car running at an ordinary rate of speed, fifty feet distant, is not, as a matter of law, negligence. *Wells* v. *Brooklyn City R. Co.,* 58 Hun 389, 12 N. Y. Supp. 67. Also, that if there is time to cross before the car arrives, a party is not bound, in order to avoid the charge of negligence, to await until the car has passed because there might be danger of slipping and falling. *Baxter* v. *Second Ave. R. Co.,* 3 Robt. (N. Y.) 510. It has also been held that where a pedestrian is about to cross a street car track in front of a car approaching at a high rate of speed, and could have done so but for an unavoidable accident, he will not be charged with contributory negligence. *Aaron* v. *Second Ave. R. Co.,* 2 Daily 127. See, also, Booth on St. Railway Law, §311. The case last cited applies with much force to the facts specially found in this case. As appellee and her husband drove off of Plum street onto Main street, one of them looked in one direction and the other in the opposite direction. It is not found as a fact that they saw or did not see the car, but there was nothing to prevent one seeing it who looked in the direction from which it was approaching. Under the authorities in this State, we must presume that the one who did look toward the car saw it. At that time the car was far enough away to give them ample time to cross the track unless some unavoidable accident should prevent. They were not bound to anticipate any such accident. The jury found that when they reached the track and the horse became frightened, began to rear and plunge, the car was 125 feet to 150 feet from them. This fact alone shows that there was an abundance of time for them to have crossed the track in safety before the car reached the point where they attempted to cross, if the horse had not balked and refused to go. As we have seen, if there was sufficient time to cross, barring unexpected and unavoid-

able accidents, they were not bound to stop and wait until the car had passed. Under the facts specially found, the court can not say as a matter of law that it was negligence for them to attempt to cross the track. It is found also that if appellee had listened, she could have heard the car, but it is not found as a fact that she did not listen. If she did not listen, and if it is conceded that her failure to listen was negligence, even then such negligence is not as a matter of law such contributory negligence as will prevent a recovery for the injury caused by the collision, unless such failure to listen materially contributed to the accident. "The negligence which prevents a recovery is that which materially contributes to the accident." *Citizens St. R. Co.* v. *Abright,* 14 Ind. App. 433. The proximate cause of the injury was the frightened and unmanageable condition of the horse, and in the absence of such condition they would have passed over the track in safety.

It is also found that appellant's servants saw, or could have seen by the exercise of reasonable care and diligence, the peril in which appellee was placed by reason of the frightened condition of the horse. The law casts upon persons in charge of a street car the duty of vigilance in observing the danger by collision to persons on the track, even though they may be negligent in being on the track, and to avoid inflicting an injury the speed of the car must be checked, if there is time so to check it, after the danger is observed; and as we have seen, the law goes to the extent of requiring the car to be stopped if necessary to prevent accident. See *Lake Erie, etc., R. Co.* v. *Juday,* 19 Ind. App. 436, and cases there cited; *Elwood St. R. Co.* v. *Ross, supra,* and authorities there cited; *Watson* v. *Broadway, etc., Co.,* 43 Hun 636, 110 N. Y. 677, 18 N. E. 482.

The jury found that there was ample time for the motorman to have stopped the car after seeing, or after he was bound to see, the impending danger in which appellee was placed. Under the facts disclosed by the answers to interrogatories, he had no right to assume that the buggy in

which appellee was riding would get off the track and leave an unobstructed passageway for the car. Some of the answers to the interrogatories are mere conclusions, but this does not destroy their force or efficacy. Eliminating such conclusions, the material facts found are, it seems to us, in perfect harmony with the general verdict. These facts disclose two propositions which are of controlling influence in the decision of this case: (1) That appellant's servants were negligent in failing to stop the car and thus avoid the accident, and (2) that appellee's acts were not the proximate cause of her injury, and hence contributory negligence can not be attributed to her. There was no error in overruling appellant's motion for judgment on the answers to the interrogatories.

Appellant's motion for a new trial was based upon many reasons, but the only one discussed is that the verdict was not sustained by sufficient evidence. The entire argument upon this branch of the case is bottomed upon the assumed proposition that the evidence shows that appellee was guilty of contributory negligence, and that this precludes her right to recover. The consideration and determination of this question require an examination of the evidence. The bill of exceptions containing the evidence covers over 500 pages of typewritten matter. There is not a marginal note on the bill of exceptions. Rule thirty of this court provides: "Where the evidence is set out by deposition or otherwise, the names of the witnesses shall be stated in the margin. The appellant shall also note on the margin all motions and rulings thereon." This rule has been wholly disregarded. Under the rules of this court (and such rules are a part of "the law of the land"), appellant has brought here an imperfect record, upon a question on which it relies for a reversal. The rule in this State is that a party asking a reversal must bring to the appellate tribunal a perfect record. Such record, to be perfect, must not only comply with the various provisions of the statute regulating appeals and

the preparation of transcripts, but also must comply with the rules of the court. The rules of the court must be construed with the provisions of the statute as constituting the law governing appeals, and hence we can not disregard either. This rule of the court which we are now considering has been strictly adhered to in all the later authorities, and it has been declared that it is not only the right but the duty of the court to enforce it. *Smith* v. *State*, 140 Ind. 340; *Egan* v. *Ohio, etc., R. Co.*, 138 Ind. 274; *Smith* v. *State*, 137 Ind. 198; *Harrod* v. *State*, 24 Ind. App. 159; *Otis* v. *Weiss*, 22 Ind. App. 161; *Babcock* v. *Johnson*, 22 Ind. App. 97; Ewbank's Manual, §119; Elliott's App. Proc. §204. We decline therefore to consider the question thus raised.

It is also urged that the damages are excessive. This question also depends upon the evidence, and for the same reason we can not consider it.

We have thus disposed of all question discussed by counsel, and we have not found any reversible error.

Judgment affirmed.