## INDIANAPOLIS STREET RAILWAY COMPANY *v.* TENNER.

[No. 4,361. Filed June 25, 1903. Rehearing denied November 20, 1903. Transfer denied January 26, 1904.]

STREET RAILROADS.—*Passenger upon Alighting Becomes a Traveler.*— One who alights from a street car on which he has been a passenger at once becomes a traveler upon the public thoroughfare, charged with the duty of exercising due care. *p. 315.*

SAME.—*Injury to Pedestrian.*—*Failure to Look and Listen.*—*Contributory Negligence.*—Plaintiff alighted from a street car on which she had been a passenger, and, without looking and listening for approaching cars, walked to the rear of a car and upon a parallel track five feet distant on which cars traveled in the opposite direction, and was injured. *Held,* that plaintiff who was familiar with the manner in which the cars were operated was guilty of contributory negligence and could not recover. *pp. 312–317.*

From Superior Court of Marion County (60,751); *Vinson Carter,* Judge.

Action by Louise Tenner against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*F. Winter, C. Winter* and *W. H. Latta,* for appellant.
*Sherman Steele, H. P. Clancy, Philip Wilkinson* and *E. D. Salsbury,* for appellee.

WILEY, J.—Appellee sued appellant to recover damages for personal injuries inflicted upon her by the alleged negligence of appellant. The complaint avers that appellant owned and operated a system of street railways in Indianapolis; that it had a double track on Massachusetts avenue, and that said avenue runs in a northeasterly direction from the central part of the city to the city limits; that cars going in a northeasterly direction use the east track, and in

going the opposite direction use the west track; that she was a passenger on an easterly bound car at about 8 o'clock p. m., May 1, 1900; that she desired to alight from said car where North street intersects with said avenue; that the car stopped at the usual place for passengers to alight; that she did alight and walked around the rear of the car to cross the two tracks to reach North street, upon which she desired to go west; that as she was stepping upon and crossing the west track one of appellant's cars, in charge of its servants, and without any warning, was run against and upon her, whereby she was injured. Answer in denial. Trial by jury, and a general verdict returned for appellee. With the general verdict the jury found specially by way of answers to interrogatories.

Appellant's motion for judgment in its favor upon the answers to interrogatories, notwithstanding the general verdict, was overruled, and this ruling presents the only question for decision not waived.

Reduced to narrative form the following facts are exhibited by the answers to interrogatories: That there was a space of five feet and one inch between the tracks where appellee attempted to cross the same; that appellee alighted from an east-bound car, and at once passed behind said car, within one or two feet of it, and over the space between the tracks and upon the west track; that she passed over the tracks at the speed of three miles per hour; that she had good eyesight and hearing; that she was twenty-six years old, strong and active, and in full use of her limbs and faculties; that the car that collided with appellee was lighted with electric lights, and had an electric headlight of sixteen candle-power; that said car ran at the rate of ten miles per hour the 100 feet first before it reached the point of collision; that when she reached the first rail of the west track the car was a distance of one car length from her; that when she passed behind the east-bound car she knew that it ob-

structed her view of any car that might be coming from the other direction; that she did not know that the car from which she alighted would soon start, and in a moment or two cease to obstruct her view toward the east; that there is no evidence that she looked east before going behind the east-bound car; that the east-bound car prevented appellee from looking east before going behind it; that there was no evidence as to what prevented appellee from waiting until the east-bound car passed and ceased to obstruct her view; that there was no evidence as to how long she would have had to wait for the east-bound car to pass on and leave the view of the west track clear; that appellee would have to go two feet over the north rail of the east track to have a clear view of the street toward the east; that when she got in the space between the tracks she could have seen east along the north track three car lengths; that when appellee got into the space between the tracks she could have seen a car on the north track a distance of three car lengths; that while she was going over the space between the tracks she was going slow enough and had enough control over her movements that she could have stopped at any place while in such space, and before going dangerously near the north track; that the car that collided with appellee was not making a great noise; that she could have heard the noise thirty feet away if she had diligently listened while in the space between the tracks; that there was no evidence as to what prevented appellee from hearing the noise of the approaching car; that the car was going eight miles an hour at the time of the collision; that it was running ten miles per hour when it was within fifty and thirty feet from the point of collision; that at seventy feet from that point it was running eleven miles per hour; that appellee did not see or hear the car that struck her, or know of its approach until she stepped over the first rail of the north track; that she had her left

foot over the south rail of the north track when she first discovered the car that struck her; that, when she did discover it, it was so close to her that she could not get off the track before being struck; that the car was one car length from her when she first discovered it; that the car that struck appellee could have been seen from a point between the tracks at all times while it ran the sixty feet immediately before it reached the place of the accident, and that at the time and before the accident appellee was familiar with the location of the tracks and the manner in which cars were operated thereon.

By the general verdict the jury resolved every issuable fact in favor of the appellee, and in that manner found that appellant was guilty of actionable negligence, and that appellee was free from negligence contributing to her injury. This finding must be left undisturbed unless the facts specially found negative and overcome the facts determined in her favor by the general verdict.

If the answers to the interrogatories are antagonistic to and in irreconcilable conflict with any material fact found by the general verdict, then the general verdict must yield to the more potent influence of the facts thus specially found. The answers to the interrogatories do not disclose any facts going to the negligence or want of negligence on the part of appellant, and hence, as to that question, the general verdict is impregnable. This leaves for consideration and determination the single question of appellee's negligence or want of negligence.

If the answers to interrogatories show that appellee's negligence contributed to her injury, then a material fact in discord with the general verdict has been established, and takes away her right to recover; for it is only the unmixed negligence of the defendant in such cases that will warrant a recovery for the plaintiff. Contribution to the injury is destructive to the right to recover. The question of appellee's negligence must be determined in

view of the fact that the burden of establishing it is cast upon the appellant.

There are some general propositions applicable to the question for decision which are possibly not seriously controvertible. When appellee alighted from the car on which she had been riding, she at once became a traveler upon a public thoroughfare, and as such the law cast upon her the responsibilities of her surroundings and environments. In crossing over the street car tracks so as to reach the sidewalk of North street, where she desired to go, she was under obligation to use ordinary care and precaution for her own safety, and such ordinary care and precaution must be measured by the situation in which she was placed, and the surroundings and conditions that confronted her. The care which a traveler upon a public highway should exercise to protect himself from danger is commensurate with the apparent danger or safety. There is more danger in crossing a street upon which electric cars are run than there is where they are not operated. Likewise there is greater danger in crossing where the travel by electric cars and other vehicles is congested than where it is light. Where two street car tracks run parallel, it is more dangerous to a foot traveler to cross from one track to another, where the view of the tracks is obstructed by a passing or standing car, than it is when the view is clear.

As appellee was required to exercise ordinary care for her own safety, the pivotal question for decision is, what, under the circumstances, conditions, and surroundings, was ordinary care? It is found as a fact that appellee was familiar with the manner in which cars were operated on appellant's tracks. She therefore knew that cars went in a northeasterly direction on Massachusetts avenue on the east track, and in the opposite direction on the west track. She knew that cars stopped for the purpose of taking on and discharging passengers. She knew

that cars stopped only a sufficient length of time to take on and discharge passengers. She knew that the car from which she alighted would move on at once and leave the view of the tracks unobstructed. With this knowledge, she was required, in the exercise of ordinary care for her own safety, to look and listen for approaching cars. The rule is that the greater the danger the higher the degree of care required to constitute ordinary care, the absence of which is negligence. *Young* v. *Citizens St. R. Co.*, 148 Ind. 54.

It is certainly more dangerous to attempt to cross street railway tracks where cars are continually passing, when such tracks are obstructed from view by a car or other object, than it is when the view is clear. It necessarily follows that to the extent that the car from which appellee alighted was an obstruction, shutting off her view of approaching cars, she was bound to use greater care than under ordinary circumstances. *Evansville, etc., R. Co.* v. *Marohn,* 6 Ind. App. 646; *Ohio, etc., R. Co.* v. *Hill,* 7 Ind. App. 255; *Cincinnati, etc., R. Co.* v. *Grames,* 8 Ind. App. 112; *Louisville, etc., R. Co.* v. *Williams,* 20 Ind. App. 576; *Lake Shore, etc., R. Co.* v. *McIntosh,* 140 Ind. 261; *Oleson* v. *Lake Shore, etc., R. Co.*, 143 Ind. 405, 32 L. R. A. 149.

Our courts have declared and adhered to the following rule: That if a traveler by looking could have seen an approaching train in time to escape it, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw, and that it will be assumed that he actually saw what he could have seen if he had looked, and heard what he could have heard if he had listened. *Young* v. *Citizens St. R. Co., supra; Ohio, etc., R. Co.* v. *Hill,* 117 Ind. 56, 61; *Cones* v. *Cincinnati, etc., R. Co.*, 114 Ind. 328, 330; *Pittsburgh, etc., R. Co.* v. *Fraze,* 150 Ind. 576; *Oleson* v. *Lake Shore, etc., R. Co., supra; Morford*

v. *Chicago, etc., R. Co.,* 158 Ind. 494; *Citizens St. R. Co.* v. *Helvie,* 22 Ind. App. 515; *Stowers* v. *Citizens St. R. Co.,* 21 Ind. App. 434.

When appellee passed into the space between the two tracks she could have seen up the track, in the direction from which the car that struck her was coming, a distance of three car lengths. It was her duty, having regard for her own safety, to look and listen, and even though there is no affirmative finding that she did or did not look and listen the result is the same. She had good eyesight and hearing, and could have stopped, as the jury found, at any point while in the space between the tracks. It is made to appear by an answer to an interrogatory that she had only one foot over the rail, that the car was then so close upon her that she could not get off, and at that moment she first discovered the car.

Our construction of the answers to interrogatories is that they conclusively show that there was nothing to prevent appellee from seeing and hearing the car in ample time to avoid the collision, and that she heedlessly walked into danger.

This case presents a state of facts identical in principle to those in the case of *Stowers* v. *Citizens St. R. Co., supra,* and the answers to interrogatories disclose facts which conclusively show that appellee was guilty of negligence contributing to her injury. To that extent, therefore, the answers to interrogatories are in irreconcilable conflict with the general verdict, and must control.

The judgment is reversed, and the trial court is directed to sustain appellant's motion for judgment on the answers to interrogatories notwithstanding the general verdict, and for further proceedings in harmony with this opinion.

Robinson, C. J., Comstock, P. J., Black and Henley, JJ., concur. Roby, J., dissents.

## DISSENTING OPINION.

ROBY, J.—This action was brought by appellee against appellant to recover damages for personal injuries. It is alleged in the complaint that appellant operated a double-track electric street car line on and over Massachusetts avenue in the city of Indianapolis, a street running in a northeasterly direction to the city limits; north-bound cars using the easterly, and south-bound cars the westerly, track; that on May 1, 1900, at 8 o'clock in the evening, appellee was a passenger on a north-bound car, which stopped at the north side of North street, a street intersecting said avenue; that she alighted and walked to the rear of said car, and started to cross Massachusetts avenue, going west on North street; that as she was in the act of crossing the west track a car propelled at a high and dangerous rate of speed, going south on the west track, was negligently run upon and against her by appellant, no warning being given of its approach, whereby she was injured.

The issue was formed by a general denial. Trial by a jury. Verdict for appellee, assessing damages at $300, together with answers to interrogatories. A motion by appellant for judgment on the answers to interrogatories, notwithstanding the general verdict, was overruled. The action of the court in overruling such motion is the only assigned error argued.

The interrogatories and their answers disclose the following facts: Appellee was about twenty-six years of age, active, and in full possession of all her faculties. She alighted from the car on the east track, at once turned and passed, at the rate of "three miles an hour," immediately behind it, and over the space between the tracks, and upon the west track. The space between the tracks was five feet and one inch. Appellee had reached the first rail of the west track when she first discovered the

car that struck her, then one car length away. She was struck by a south-bound car, lighted with electric lights and headlight, running at the average rate of speed, within the first 100 feet before the collision, of ten miles per hour. She had to go two feet into the space between the tracks to have a clear view of said west track. When she passed into the space between the tracks, a car on the west track could be seen three car lengths away. The approaching car was not making a great noise. It could have been heard, if she had diligently listened, while thirty feet away. She did not see or hear the car that struck her until she stepped over the first rail of the west track. It was then so close that she could not escape. She was familiar with the location of the tracks, and with the manner in which the cars were operated, in a general way.

The street railway is held in this, and most of the states, not to create an additional burden upon the lands dedicated for highway purposes. Such use being regarded as consistent with the purposes of the dedication, and not a new servitude. *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.*, 139 Ind. 297, 304, 26 L. R. A. 337, 47 Am. St. 264; *Eichels* v. *Evansville St. R. Co.*, 78 Ind. 261, 41 Am. Rep. 561; *Elliott* v. *Fair Haven, etc., R. Co.*, 32 Conn. 579; *Randall* v. *Jacksonville St. R. Co.*, 19 Fla. 409, 429; *Savannah, etc., R. Co.* v. *Mayor*, 45 Ga. 602; *Louisville, etc., Mfg. Co.* v. *Central, etc., R. Co.*, 95 Ky. 50, 23 S. W. 592, 44 Am. St. 203; *Brown & Co.* v. *Duplessis*, 14 La. Ann. 842; *Koch* v. *North Ave. R. Co.*, 75 Md. 222, 23 Atl. 463, 15 L. R. A. 377; *Green* v. *City, etc., R. Co.*, 78 Md. 294, 307, 28 Atl. 626, 44 Am. St. 288; *Howe* v. *West End St. R. Co.*, 167 Mass. 46, 51, 44 N. E. 386, and cases cited; Booth, Street Ry. Law, §83; Joyce, Electric Law, §341; Croswell, Electricity, §107,

"A highway is a public way open and free to anyone who has occasion to pass along it on foot or with any kind of a vehicle. In every highway the King and his subjects may pass and repass at their pleasure." *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475, 37 Atl. 379, 37 L. R. A. 533.

The streets of Indianapolis are public highways. Every traveler has an equal right therein. If it were conceded that an electric railway company gains by the location of its tracks and the operation of its cars thereon an interest in or a right over such highway, different in kind from that of the general public, such concession would require that it make compensation therefor to the adjacent owner, and would result in the overthrow of the line of decisions above cited. *Shea* v. *St. Paul City R. Co.*, 50 Minn. 395, 399, 52 N. W. 902; *Cincinnati St. R. Co.* v. *Snell*, 54 Ohio St. 197, 43 N. E. 207, 32 L. R. A. 276; *Newark, etc., R. Co.* v. *Block*, 55 N. J. L. 605, 27 Atl. 1067, 22 L. R. A. 374.

It was long since declared that in the actual use of a public highway every person has an equal right to use it for his own best advantage, to suit his own conveniences or pleasure, but at all times with a just regard to the like rights of every other person. So far as rendering himself liable to damages is concerned, a man may drive fast or slow, with a light wagon or with a loaded team, with a well-broken horse or with an ill-broken one, along a crowded thoroughfare as well as a vacant street, provided he does not interfere with the just rights of any other person. If a man wishes to drive fast, he must do so with respect to the rights of those who drive slow. If he desires to drive slow, he must do so with respect to those who drive fast. The loaded team and the light wagon must each pay a due regard to the rights of the other. If one drives in a crowded street, he must exercise reasonable care not to endanger other travelers. If he

drives an ill-broken horse he must keep it so well in hand as not to expose others to unreasonable hazard. The rights thus defined are enforced in Indiana. *Stringer* v. *Frost,* 116 Ind. 477, 478, 2 L. R. A. 614, 9 Am. St. 875; *Green* v. *Eden,* 24 Ind. App. 583; *Scofield* v. *Myers,* 27 Ind. App. 375; *Simons* v. *Gaynor,* 89 Ind. 165.

The character of the vehicle may have an important part in determining what constitutes ordinary and reasonable care in a given case, but the standard of conduct is the same for all. The driver of an automobile, the rider of a bicycle, and the operator of an electric car—vehicles not invented when many highways were dedicated—are not excluded from using them by reason of such fact, nor are they exempted from the corresponding duty of exercising reasonable care while so doing, taking into account, among other things, the character of the vehicle used by them. *Thompson* v. *Salt Lake, etc., Co.,* 16 Utah 281, 52 Pac. 92, 67 Am. St. 621, 40 L. R. A. 172; *Newark, etc., R. Co.* v. *Block,* 55 N. J. L. 605, 27 Atl. 1067, 22 L. R. A. 374; *Cincinnati St. R. Co.* v. *Whitcomb,* 66 Fed. 915, 14 C. C. A. 183; *Cogswell* v. *West St., etc., R. Co.,* 5 Wash. 46, 31 Pac. 411; *Tacoma R., etc., Co.* v. *Hays,* 110 Fed. 496, 49 C. C. A. 115; *Schilling* v. *Metropolitan St. R. Co.,* 62 N. Y. Supp. 403.

While the street car does not and can not have an exclusive right in or to the street, it does have a superior, or, more properly, a preferential right to the use of that portion covered by its tracks, arising from the reasonable necessities of its operation. Running in a fixed course it can not be turned to the right, hence the law of the road as applicable to other vehicles does not apply to it. It can not pass around obstructions on its track, hence others using the street must stand aside to permit its passage. *DeLon* v. *Kokomo City St. R. Co.,* 22 Ind. App. 377; *Hicks* v. *Citizens R. Co.,* 124 Mo. 115, 27 S. W. 542, 25

L. R. A. 508; *Mahoney* v. *San Francisco, etc., R. Co.,* 110 Cal. 471, 475, 42 Pac. 968; *Robinson* v. *Louisville R. Co.,* 112 Fed. 484, 50 C. C. A. 357; *Arnesen* v. *Brooklyn City R. Co.,* 9 Misc. (N. Y.) 270, 29 N. Y. Supp. 748; *Hall* v. *Ogden City St. R. Co.,* 13 Utah 243, 44 Pac. 1046, 57 Am. St. 726; *Tacoma R., etc., Co.* v. *Hays, supra; Thompson* v. *Salt Lake, etc., Co., supra; Consumers, etc., St. R. Co.,* v. *Pryor* (Fla.), 32 South. 797.

This preferential right does not relieve the operator of the street car from obligations imposed upon those using the highway; generally stated, all such persons are bound to use ordinary and reasonable care, under the particular conditions and circumstances existing, to avoid injuring others, and to escape injury themselves, and they have a right to expect like care from others. A very casual observation of the movement upon a city thoroughfare will satisfy anyone that, without the exercise of care and caution on the part of each one of the multitude of persons passing over and along it, the continuance of travel would be impossible. The duty of the driver of the heavy vehicle does not end when he is secure from injury from others, but requires the use of care by him to avoid injuring them.

It is not denied that the general verdict is conclusive upon the question of appellant's negligence in connection with the injury complained of. It stopped its car upon a double track, discharged its passenger, and had an opportunity to observe her walking toward the second track. The motorman upon the opposing car, representing appellant, and acting for it, knew that the car he was meeting had stopped upon a crossing; that to one alighting from that car the view of his car was cut off. He knew that the intersecting street was a place where travelers on foot and otherwise crossed the street and tracks as their convenience required, and was bound to regulate and control his movements in view of these facts, and yet ran his car,

when 100 feet from the point of collision, at eleven miles an hour, without warning or signal. The collision occurred at a street crossing. The rights of the parties to the use of the street at such place were equal. The car has a right to cross, and must cross, the street; the traveler has a right to cross, and must cross, the tracks. *O'Neil* v. *Dry Dock, etc., R. Co.,* 129 N. Y. 125, 29 N. E. 84, 26 Am. St. 512; *Cincinnati St. R. Co.* v. *Snell,* 54 Ohio St. 197, 43 N. E. 207, 32 L. R. A. 276; *Citizens St. R. Co.* v. *Damm,* 25 Ind. App. 511.

Appellant contends that the answers to interrogatories show appellee to have been negligent in failing to look and listen. Whether she exercised ordinary and reasonable care, under all the circumstances, in passing upon the track as she did, was a question for the jury, a component part of the judiciary, representing collectively the average intelligence and integrity of the community, and therefore peculiarly fitted to determine whether in a given instance the care which would or should be used by an ordinarily prudent man under the same or similar circumstances was or was not exercised. *Citizens St. R. Co.* v. *Hamer,* 29 Ind. App. 426; *Chicago City R. Co.* v. *Robinson,* 127 Ill. 9, 18 N. E. 772, 4 L. R. A. 126, 11 Am. St. 87; *Thompson* v. *Salt Lake, etc., Co., supra; Consumers, etc., St. R. Co.* v. *Pryor, supra; Hall* v. *Ogden City St. R. Co., supra; Newark, etc., R. Co.* v. *Block, supra; Traction Co.* v. *Scott,* 58 N. J. L. 682, 34 Atl. 1094, 55 Am. St. 620, 33 L. R. A. 122; *Cincinnati St. R. Co.* v. *Snell, supra; Roberts* v. *Spokane St. R. Co.,* 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184; *Robbins* v. *Springfield St. R. Co.,* 165 Mass. 30, 42 N. E. 334; *Lawler* v. *Hartford St. R. Co.,* 72 Conn. 74, 82, 43 Atl. 545; *Woodland* v. *North Jersey St. R. Co.,* 66 N. J. L. 456, 49 Atl. 479.

There is little analogy between a steam railroad and the steps necessary to constitute reasonable care on the part of one about to go over it, and the crossing of intersecting

highways, upon one of which street car tracks are maintained, and the necessary precaution to be taken in the exercise of reasonable care by one about to go across it. The steam road occupies a right of way purchased and paid for. The legislature has not attempted to grant an equal or similar interest in the streets to the car. company, and could not do so if it had. The steam road crosses the highway as a matter of necessity. The car company uses it longitudinally as a matter of choice, and upon terms of equality. No element of trespass attaches to one approaching or traveling over the streets or along the car tracks laid therein. The steam road draws trains of heavily laden cars with locomotive engines. Its trains are difficult to put in motion, difficult to stop, and incapable of being kept constantly in hand. The electric car has only its own momentum to overcome. It can be run with ample rapidity, and yet be shortly checked and stopped. Prudence requires the traveler about to cross the steam road to observe any approaching train within his vision, and to give it a clear track. Were he compelled to await the passage of all street cars within the range of his vision before crossing the streets over which they are run, it would be, in the language of the supreme court of Ohio, "like sitting on the bank until the stream should run by." The traveler passing over the railroad track knows that the train can not be controlled with reference to him. The traveler on the public streets knows and acts upon the knowledge that "the rights of each must be exercised with due regard to the rights of the others." *Howard* v. *Indianapolis St. R. Co.,* 29 Ind. App. 515; *Citizens St. R. Co.* v. *Damm, supra; Garrity* v. *Detroit, etc., St. R. Co.,* 112 Mich. 369, 70 N. W. 1018, 37 L. R. A. 529; *Shea* v. *St. Paul City R. Co.,* 50 Minn. 395; *Newark, etc., R. Co.* v. *Block, supra; Cincinnati St. R. Co.* v. *Snell, supra; Hall* v. *Ogden City St. R. Co., supra.* He need pay attention only to such cars as are likely to imperil his safety, assuming that they are

managed with reasonable caution and care. The strict rules applicable to persons passing over the steam road crossing do not apply to those passing over car tracks laid in the highway along intersecting streets. *Evansville St. R. Co.* v. *Gentry,* 147 Ind. 408, 37 L. R. A. 378, 62 Am. St. 421; *Muncie St. R. Co.* v. *Maynard,* 5 Ind. App. 372, 383; *Citizens St. R. Co.* v. *Abright,* 14 Ind. App. 433, 438; *Citizens St. R. Co.* v. *Damm, supra; Marchal* v. *Indianapolis St. R. Co.,* 28 Ind. App. 133; *Howard* v. *Indianapolis St. R. Co.,* 29 Ind. App. 515; *Chicago, etc., R. Co.* v. *Robinson, supra; Newark, etc., R. Co.* v. *Block, supra; Cincinnati St. R. Co.* v. *Snell, supra; Traction Co.* v. *Scott, supra; Smith* v. *Union Trunk Line,* 18 Wash. 351, 45 L. R. A. 169; *Roberts* v. *Spokane St. R. Co., supra; Fenner* v. *Wilkes-Barre, etc., Traction Co.,* 202 Pa. St. 365, 51 Atl. 1034; *Shea* v. *St. Paul City R. Co., supra. Young* v. *Citizens St. R. Co.,* 148 Ind. 54, was a case in which the collision was between crossings, and is therefore not in conflict with *Evansville St. R. Co.* v. *Gentry, supra;* the distinction was pointed out in *Marchal* v. *Indianapolis St. R. Co., supra.* In so far as that opinion appears to make a comparison of steam and street railways, the language used must be limited by the facts considered, which were, quoting from the opinion, "merely because steam railroad trains are heavier and more difficult to control than an electric street car on a street railroad." As heretofore shown the difference between the two systems of transportation, while including that stated, are much more extensive. The rule which prevails in the absence of the interests of railroad traffic is stated in *Stoy* v. *Louisville, etc., R. Co.,* 160 Ind. 144. See, also, *Cleveland, etc., R. Co.* v. *Penketh,* 27 Ind. App. 210, wherein the questions of contributory negligence on the part of the person injured while standing upon side-tracks of steam railways were considered. The conclusion reached in the *Young* case, *supra,* was correct. There is no reason of any

kind why one on a street car track should be excused from stepping off of it and out of danger when he can do so. He who knowingly encounters danger, whether he be injured by collision with wagon, street car, or otherwise, can not recover for that to which his own fault contributed. For the purposes of this proposition he must be held to know that which he refuses to see. Where a traveler goes upon a street car track without looking, and is struck by an approaching car, the fault is his own. His duty is to use reasonable care to escape collision instead of negligently encountering it. When he walks in front of an approaching car, in the absence of other circumstances, without looking, he is on a par with one who looks, and, seeing, chooses to encounter. The Michigan cases cited in the Young case, *supra,* involve such facts. In a later case the court refers to them as follows: "The Fritz case was put expressly upon the ground that the driver of a milk wagon turned suddenly and unexpectedly in front of the car. * * * The Blakeslee case was put upon the same ground—that a sudden turning in front of the car, without any effort to ascertain if a car was coming, was the cause of the accident." *Rouse* v. *Detroit, etc., Railway,* 128 Mich. 149, 152, 87 N. W. 68. In *McGee* v. *Consolidated St. R. Co.,* 102 Mich. 107, 60 N. W. 293, 26 L. R. A. 300, 47 Am. St. 507, McGee deliberately walked in front of an approaching car.

In *Citizens St. R. Co.* v. *Helvie,* 22 Ind App. 515, decided upon the authority of the Young case, *supra,* and therefore based, as it was, upon the Michigan cases, which it also cites, the party injured suddenly turned north, and attempted to cross the tracks in front of a rapidly approaching car.

*Kessler* v. *Citizens St. R. Co.,* 20 Ind. App. 427, was another of the same class; recovery was denied upon the ground that the driver of the car was not negligent, having exerted himself to the utmost to avoid collision, after its

danger was apparent, but it might also have been placed upon the ground of contributory negligence of the appellant, he having driven on the track thirty feet in front of the rapidly approaching car.

These cases do not hold that facts may not exist under which the failure to see is not contributory negligence. The question of such negligence can not be declared as a matter of law without reference to contemporaneous circumstances and conditions. *Lawler* v. *Hartford St. R. Co.*, 72 Conn. 74; *Shea* v. *St. Paul City R. Co., supra; Cincinnati St. R. Co.* v. *Whitcomb*, 66 Fed. 915, 14 C. C. A. 183; *Robinson* v. *Louisville R. Co.*, 112 Fed. 484, 50 C. C. A. 357; *Citizens Rapid Transit Co.* v. *Seigrist*, 96 Tenn. 119, 33 S. W. 920; *Reilly* v. *Brooklyn Heights R. Co.*, 72 N. Y. Supp. 1080; *Schoener* v. *Metropolitan St. R. Co.*, 76 N. Y. Supp. 157; *Sophian* v. *Metropolitan St. R. Co.*, 78 N. Y. Supp. 837. Where, in view of such circumstances, reasonable men differ, the question becomes one of fact. For the purpose of this test the members of this court may be considered reasonable men.

When appellee started west, she must have crossed the tracks at an angle placing the approaching car east of her, north of and behind her. What, if anything, attracted and held her attention while she took the two or three steps necessary to cover the space named is not shown. She was under no greater obligation to look northeasterly than to look along other intersecting streets. It does not appear what other vehicles were there being propelled or driven. It can not be said as a matter of law or fact that it is always prudent to stand still in a city street; many times it would be the height of negligence to do so. *Evans* v. *Adams Express Co.*, 122 Ind. 363, 7 L. R. A. 678.

It can not be said that appellee ought to have remained standing where she alighted; the wisdom of so doing must have been determined by her, and must now be determined

in view of circumstances not shown. It might have been an act of prudence for her, in escaping injury from or collision with other vehicles, to rely upon the assumption that appellant would not be negligent, and would not run the opposing car at the place, and at the rate, and without giving signals, as he did. That she could not see it until within the space named is due to appellant. Probably no injury ever occurred through collision on the highways in which the injured party could not have observed the approaching danger had he looked in the right direction at the proper instant. To hold in this case that the naked facts shown by the answers preclude recovery, notwithstanding circumstances shown tending to excuse it, and notwithstanding circumstances not negatived which might have been proved under the issue, is to declare that for injuries negligently inflicted upon the highway there can be no recovery, or that a street railway company is entitled to greater rights thereupon than others lawfully using the same. Neither alternative can be for a moment considered.

It does not seem necessary to reiterate the proposition that special findings only overthrow the general verdict when both can not stand, and when they are so antagonistic that they can not be reconciled by evidence admissible under the issues.

The sole fact whereon the court is asked to declare contributory negligence as a matter of law, and thereby to overthrow the verdict of the jury herein, is that appellee walked three feet and one inch without seeing the car by which she was injured, when she might have seen it had she looked in the right direction. Her failure to discover the approaching car is one of the facts attending the occurrence; the jury had all the facts connected therewith before it. The failure to discover danger may often be, and frequently is, a circumstance of controlling importance, but that fact does not preclude the consideration of circum-

stances attendant thereon. They must all be taken together. The answers to interrogatories do not show what all the other circumstances under which appellee acted were. Neither do they negative the existence of conditions explaining the omission above stated. If evidence could have been introduced affecting the quality of such omission, it must be presumed, in aid of the general verdict, that it was introduced and considered by the jury. The burden of proving negligence is placed by statute upon the defendant. §359a Burns 1901.

The majority opinion ignores all distinction between the function of court and jury, and thereby irreconcilably conflicts with many Supreme Court cases. *Baltimore, etc., R. Co.* v. *Walborn,* 127 Ind. 142; *W. C. DePauw Co.* v. *Stubblefield,* 132 Ind. 182; *Citizens St. R. Co.* v. *Jolly,* 161 Ind. 80. It loses sight of the principle upon which the look and listen rule, as applied to steam railway crossings, is based, and thereby is again in the teeth of many well considered Supreme Court opinions. *Stoy* v. *Louisville, etc., R. Co.,* 160 Ind. 144. The holding is that one injured in a collision at the crossing of intersecting streets by a negligently run street car is, as a matter of law, guilty of contributory negligence for failure to see the car, without regard to the conditions existing, and regardless of the judgment of the jury. It is unfortunate from every point of view that such a conclusion can ever obtain judicial sanction. The sure guaranty of every man's right is in the protection of the right of every other man. Those who secure and take privileges not granted to others must expect, and will surely suffer from, reprisals, and reprisals are to the detriment not only of those against whom they are directed, but of the state and all its citizens.

I most heartily dissent from this decision.